115 Mich. App. 19 (1982)
320 N.W.2d 276
IN RE CRAWFORD ESTATE
HARE
v.
HAMMONDS
Docket No. 56685.
Michigan Court of Appeals.
Decided April 7, 1982.
Norman P. Silverstein, for plaintiff.
Marijana Relich, for defendant.
*21 Before: N.J. KAUFMAN, P.J., and V.J. BRENNAN and R.L. TAHVONEN,[*] JJ.
V.J. BRENNAN, J.
Petitioner appeals as of right the probate court's decision denying his claim to certain real estate as named beneficiary of a will.
On July 27, 1974, Chester A. Crawford and Lucy Jane Crawford, husband and wife, jointly executed a will naming petitioner, Shadrach Hare, beneficiary of the survivor of them. Three pertinent paragraphs of the will provided as follows:
"SECOND:
"We give, devise and bequeath to each other, respectively, all of the rest, residue and remainder of our estate, both real, personal and mixed, of whatsoever kind and nature and wheresoever the same may be situated of which we may die seized or possessed, or to which either of us may be entitled at the time of our deaths.
"THIRD:
"After the decease of both of us, it is our will, and the will of each of us, and we, and each of us, direct that all the estate which we, or either of us, shall own or be entitled to at the time of our deaths, or the death of the survivor of us, both real, personal and mixed, of whatsoever kind and nature and wheresoever the same may be situated, shall go to and be paid over, delivered, transferred and conveyed to Shadrach Hare.

* * *
"NINTH:
"This joint will is made in pursuance of contract or agreement between us for the purpose of disposing of all of our property, whether owned by us as joint tenants, as tenants in common, or as tenants by the entireties, in the manner hereinabove in this, our Last Will and Testament, provided."
Lucy J. Crawford died on November 6, 1974, but the joint will was not probated. Title to the home *22 owned by Lucy and Chester Crawford passed solely to Chester as surviving tenant by the entireties. On May 30, 1975, a deed was recorded which showed that Chester Crawford, individually and as survivor of his wife, did quit claim to himself and Bessie Lee Hammonds, respondent, all interest in the property as joint tenants with full rights of survivorship.
Respondent claimed that she worked for Chester Crawford, from the date of Lucy Crawford's death to the date of Chester's death, as a live-in practical nurse and housekeeper. Respondent also claimed to have spent considerable funds to renovate, repair and redecorate the house in the belief that the house would belong to her upon decedent's death.
Chester Crawford died on January 14, 1980, and the will executed in 1974 was offered for probate. The personal representative filed a petition on behalf of petitioner, the designated beneficiary under the will, asserting petitioner's ownership of the house. The personal representative maintained that Crawford's conveyance of the property to himself and respondent was in violation of an underlying contract to make a will and as such operated to violate the interest of petitioner, the beneficiary under the will.
The probate court denied this claim on the ground of laches, and stated:
"It must be remembered that specific performance of a contract to make a will, is an equitable action and as such is liable to equitable defenses. If one accepts that there did exist a contract between the decedent and his wife to leave all their property to Mr. Hare, then, the breach of that contract occurred in May of 1975. Said breach, in the form of the deed, was publicly recorded and it is clear that Mr. Hare was aware of that deed. It *23 is also clear to this court that during the five years prior to Mr. Crawford's death, Mr. Hare could have sued for this performance. At that time the person most able to testify to the existence of an agreement would have been available, Mrs. Hammonds would have not relied upon her interest in the property, and circumstances would not have changed in such a way as to make this action now inequitable."
The court decided that the parties would remain as the court found them, with title residing in respondent as survivor of her joint tenant, Chester A. Crawford.
Petitioner first claims that it was error for the probate court to base its decision on the doctrine of laches.
GCR 1963, 111.2, 111.3 and 111.7 state that if affirmative defenses, including estoppel, are not raised in responsive pleadings then the defenses are waived. Petitioner contends that because respondent did not raise the doctrine of laches (estoppel) in responsive pleadings, it was error for the probate court to decide this case based on that doctrine.
The Legislature has granted the probate courts concurrent jurisdiction with the circuit courts to determine interest and title to real estate. MCL 700.22; MSA 27.5022. This statute, however, does not require probate courts to apply the general court rules in such cases. PCR 11.2 states:
".2 Scope, Relationship to General Court Rules. These rules govern the practice in the probate courts in all proceedings other than proceedings in the juvenile division of the probate court. Promulgated to provide clarity and specificity for proceedings in the probate courts, they have been numbered to correspond in subject matter with the general court rules and are to be *24 considered and construed as amplifying and consistent with those rules."
This Court in the recent decision of In re Swanson Estate, 98 Mich App 347, 350; 296 NW2d 256 (1980), stated:
"GCR 1963, 11.1 provides that the general court rules govern the practice in the circuit courts, the recorder's court, the Court of Appeals and the Supreme Court but makes no mention of the probate courts. On the other hand, PCR 11.2 provides that the probate court rules govern the practice in the probate courts in all proceedings other than proceedings in the juvenile division. We conclude that the general court rules do not apply to the probate court except in those instances where the probate court rules adopt provisions of the general court rules by specific reference." (Footnotes omitted.)
The respondent has correctly noted that chapter 10 of the general court rules and chapter 10 of the probate court rules both govern pleading requirements and that under the PCR there is no obligation to respond in writing to a claim unless the probate judge so directs. PCR 112. There is no specific reference in chapter 10 of the probate court rules as to adoption of the general court rules in regard to pleading of affirmative defenses. It is, as respondent argues, illogical to contend that the provisions of GCR 1963, 111 apply to responsive pleadings in the probate court when the probate code itself apparently does not even make responsive pleadings mandatory.
Petitioner cites PCR 201.1, which specifically states that chapter 20 of the general court rules governs proceedigns in probate court where applicable. This PCR is of little support to petitioner inasmuch as GCR 1963, 111, regarding responsive pleadings, is found in chapter 10 of the general *25 court rules and not chapter 20. A review of chapter 10 of the probate court rules has revealed no mention of chapter 10 of the general court rules being made specifically applicable in probate. That omission is dispositive of the applicability of GCR 1963, 111 to probate practice. Therefore, GCR 1963, 111 does not apply to probate practice.
Respondent was not required by PCR 112 to file a written response to petitioner's claim, and a review of the record has not revealed an order by the probate judge requiring such a response. Thus, the failure of the respondent to affirmatively plead the defense of laches, as required in other courts per GCR 1963, 111, is not tantamount to a waiver of that defense. The probate judge, pursuant to PCR 113.2, required that briefs be filed in order to determine the interest in the Crawford house. In her brief, the respondent raised the doctrine of laches, and at the subsequent hearing held on January 6, 1981, the probate court ruled against the petitioner after having read the briefs. We find no error on the part of the probate court in applying the doctrine of laches.
Petitioner also claims that the probate court inappropriately applied the doctrine of laches since the opinion of the probate court did not state any grounds upon which laches could be found other than the mere passage of time. Petitioner maintains that no other inequities can be found in the record.
Laches is an affirmative defense which depends not merely upon the lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff. Lewis v Poel, 376 Mich 167, 169; 136 NW2d 7 (1965), Root v Republic Ins Co, 82 Mich App 446; 266 NW2d 842 (1978). For *26 one to successfully assert the defense of laches, it must be shown that there was a passage of time combined with some prejudice to the party asserting the defense of laches. Head v Benjamin Rich Realty Co, 55 Mich App 348, 356; 222 NW2d 237 (1974), lv den 393 Mich 792 (1975). See also Wiljamaa v Board of Education of City of Flint, 50 Mich App 688, 692; 213 NW2d 830 (1973). Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence. Sloan v Silberstein, 2 Mich App 660, 676; 141 NW2d 332 (1966).
We find that the elements of the defense of laches were all satisfied by the facts presented to the probate court.
First, the quit claim deed, which petitioner claims breached his beneficiary interest in the property as granted by the contract to devise, was recorded on May 30, 1975. This recordation gave notice to petitioner that Crawford and respondent were at that date joint owners in the property. Although petitioner had constructive notice of this 1975 deed, he chose not to make a claim on the property until April, 1980, approximately five years from the time the deed was publicly recorded. Thus, looking at the public record it becomes clear that the first element of laches has been satisfied, i.e., the passage of time from the breach of the alleged contract to the time petitioner took any action. It does not appear that any testimony to satisfy this element was necessary since petitioner did not contest the May 30, 1975, recordation. Further, on appeal, petitioner does not dispute that the recordation took place on that date.
Second, lack of due diligence by petitioner was *27 established by the inclusion in petitioner's brief in the probate court of an earlier equitable action involving petitioner and decedent, Chester Crawford. In that proceeding commenced by Crawford's sister, it was alleged that Chester Crawford was incompetent. Petitioner was a witness and he testified on June 2, 1976, that he never thought the home would be his. Petitioner acknowledged that he was the beneficiary under the will, but stated that he was not present when the will was drawn up and did not know if the will was still valid. The testimony by petitioner, taken under oath, was evidence of his knowledge of the will, and the fact that he knew that he was the named beneficiary and his failure to assert any ownership interest in the house.
Reading these facts in conjunction with the public recordation of the quit claim deed of May, 1975, and the claim made on the property for the first time in April of 1980, it appears that there were sufficient facts for the probate court to conclude lack of due diligence by petitioner without the need to have testimony on that issue. During the lower court proceeding, petitioner did not deny that the proceeding of June 2, 1976, took place or that he made those statements. There was also no evidentiary objection, and on appeal petitioner does not contest that the earlier proceeding occurred. It thus seems clear that no testimony was needed to establish the fact that the petitioner did not exercise due diligence in presenting his claim against the Crawford property.
Third, the element of change in condition or circumstances inequitably affecting the adverse party was satisfied by the statement and proof of claim made by respondent on September 3, 1980. Respondent stated that on August 30, 1976, she *28 and her family moved in with decedent, Chester Crawford, and that she spent approximately $15,000 of her own funds renovating and repairing the property. Respondent spent the money in the belief that the real estate would belong to her upon the death of the decedent. Pursuant to PCR 110.2, respondent declared under the penalties of perjury that this petition was examined by her and was true. Since PCR 110.2 allows proof of claims to be authenticated by verification under oath or by the method used by respondent, this declaration by respondent was construed to be a satisfactorily reliable statement of fact upon which the probate court could rely. Had respondent been aware of a conflicting claim of ownership interest by petitioner, through virtue of the alleged contract to devise the property to petitioner, it is reasonable to conclude that respondent would not have expended such funds on the house when her own interest may have been suspect. The failure of anyone to make a legal claim to the property, well after the deed making defendant joint owner with rights of survivorship was publicly recorded, induced respondent to change her position in reliance on this lack of action by petitioner. See Schlaack v Cornetet, 319 Mich 544; 30 NW2d 274 (1948) (laches barred a claim to set aside a deed 8 1/2 years after it had been recorded and defendant grantee had been in possession and made improvements upon the house).
Thus, the probate court had ample and reliable facts before it when it determined that the doctrine of laches foreclosed any claim by the petitioner to the Crawford property. Moreover, contrary to the petitioner's claim, the probate court set forth the necessary elements of laches in its opinion and stated that petitioner could have sued *29 during the five years prior to Mr. Crawford's death but did not and: "Mrs. Hammonds would have not relied upon her interest in the property, and circumstances would not have changed in such a way as to make this action now inequitable." We, therefore, find that the probate court did properly determine that all of the elements of the doctrine of laches were satisfied by the facts of this case, and the mere passage of time was not the only basis of the probate court's decision.
Finally, petitioner claims that the probate court was required to conduct an evidentiary hearing. However, petitioner cites no authority for this proposition. We are not convinced that an evidentiary hearing was required to be held so that testimony could be taken on the issue of laches where the record indicated sufficient facts to determine whether laches applied.
Affirmed.
NOTES
[*] Circuit judge, sitting on the Court of Appeals by assignment.