## ROYCE v DUTHLER

Docket Nos. 169796, 168861. Submitted November 9, 1994, at Grand Rapids. Decided April 4, 1995, at 9:25 A.M.

Stella Royce brought an action in the Ottawa Circuit Court against Julius and Dorothy Duthler, Wayne and Cynthia Shabaz, and Elliot Hansen, seeking to quiet title to a parcel of land that she owned. The plaintiff sought a declaration that a driveway easement that ran across her property was not for the benefit of a parcel of property that was owned by the Duthlers and was being sold to the Shabazes and an injunction prohibiting the defendants from using that easement. Before 1957, both parcels were part of a larger parcel of lakefront property owned by Walter and Mary Idema. The Idemas sold the southernmost portion of the parcel to a church, granting the church an easement across the portion of the property they retained. The Idemas later sold the remainder of the parcel to the Duthlers. The Duthlers subdivided the parcel, selling the northern end of the parcel to Carson and Elizabeth Donley and retaining the middle parcel. Although the buy-sell agreement between the Duthlers and the Donleys provided that the driveway was a permanent easement to the lot to the south, the deed did not reserve an easement over the Donleys' lot for the benefit of the Duthlers' middle lot. By a separate agreement, the Duthlers granted the Donleys the right of first refusal in the event of the sale of the middle lot. The plaintiff purchased the northern lot from the Donleys and was assigned the Donleys' interest in the agreement granting the right of first refusal. Thereafter, the Duthlers subdivided the middle parcel into a front lot on the lake and a back lot bordering on a road. The driveway easement that ran across the plaintiff's property ran across the newly created front lot to the church lot to the south. When the Shabazes offered to purchase the lakefront lot from the Duthlers, the plaintiff was given notice of the offer and she subsequently informed the Duthlers that she would not exercise her right of first refusal. The Shabazes later learned of the plaintiff's intent to block their use of the driveway easement, and on the day of the scheduled closing of the sale of the lakefront lot, the plaintiff instituted the action to quiet title. Because the lakefront lot would be landlocked without the

driveway easement across the plaintiff's property, the Duthlers offered the Shabazes an easement across the back lot and also offered the easement to the plaintiff pursuant to the first-refusal agreement. Within the thirty-day acceptance period, the plaintiff notified the Duthlers of her desire to exercise her right of first refusal, but sent a proposed easement that differed from that offered by the Duthlers. The Duthlers rejected the plaintiff's proposal. The plaintiff offered to purchase the lakefront lot under the terms extended to the Shabazes, claiming a right to do so pursuant to her right of first refusal because the new sales agreement including the easement revived the right of first refusal. The Duthlers rejected the offer, and the plaintiff amended her complaint by adding a count for specific performance based on her alleged right to purchase the lakefront lot pursuant to the right of first refusal. The court, Wesley J. Nykamp, J., granted summary disposition for the Shabazes and denied summary disposition for the plaintiff with respect to the claim for specific performance, holding that the plaintiff lost her right to first refusal with respect to the lakefront lot with her failure to make a timely acceptance of the original offer and that she was barred by the clean hands doctrine from seeking specific performance. The plaintiff appealed. Following a bench trial, the court, Edward R. Post, J., entered an injunction forbidding the defendants' use of the easement, finding that the Duthlers and the Donleys intended to create an easement across the north parcel for the benefit of the middle parcel, but that the plaintiff had purchased the northern lot without constructive notice of that intent or actual notice of the easement and that she, therefore, was a bona fide purchaser for value without notice of the easement. The Duthlers appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. A person seeking equity should be barred from receiving equitable relief if there is any indication of overreaching or unfairness on that person's part. The plaintiff's delay in notifying the Duthlers and the Shabazes of her intention to block access to the lakefront lot by means of the driveway across her property, and thereby causing the Duthlers to have to offer an easement across the back lot, transgresses equitable standards of conduct and precludes the plaintiff from obtaining equitable relief in the form of specific performance of any right of first refusal with respect to the lakefront lot. Accordingly, the trial court did not err in granting summary disposition for the Shabazes and denying summary disposition for the plaintiff with respect to the claim for specific performance.

2. A person who purchases property without notice of a

defect in the vendor's title is a good-faith purchaser. Notice need be only notice of the possibility of the rights of another, not positive knowledge of those rights. Because the existence of the driveway was open and obvious and the surveys of the lots clearly showed an easement that crossed the plaintiff's property to the middle lot, the plaintiff at the time she purchased her property had sufficient knowledge to provide her with notice of the need to make further inquiry into the nature of the easement. Such an investigation would have caused her to discover that it was the intent of the Duthlers and the Donleys that the easement was to be for the benefit of the middle lot. Accordingly, the trial court erred in holding that the plaintiff was a good-faith purchaser without knowledge of the true nature of the easement and in enjoining the defendants from using the easement.

Affirmed in part, reversed in part, and remanded.

*Mika, Meyers, Beckett & Jones* (by *Elizabeth K. Bransdorfer* and *David W. Charron*), for the plaintiff.

*Schenk, Boncher & Prasher* (by *Gary P. Schenk* and *Curtis D. Rypma*), for Julius and Dorothy Duthler.

*Willingham & Coté, P.C.* (by *John L. Coté* and *Jane A. Kelpac*), for Wayne and Cynthia Shabaz.

Before: DOCTOROFF, C.J., and WHITE and A. L. GARBRECHT,* JJ.

PER CURIAM. This consolidated appeal stems from an action to quiet title instituted by plaintiff, Stella Royce, against defendants Julius and Dorothy Duthler, Wayne and Cynthia Shabaz, and Elliott Hansen[1] concerning rights to an easement across Royce's property and from an action filed by the Shabazes against Royce for damages resulting

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Elliott Hansen was not an active party in the proceedings below and has not filed a brief on appeal.

from Royce's interference with the Shabazes' contract to purchase a parcel of land from the Duthlers. We affirm the trial court's order granting Wayne and Cynthia Shabaz' motion for summary disposition and denying Royce's cross motion for summary disposition in Docket No. 162796, reverse the trial court's order enjoining the Duthlers and the Shabazes from using the easement across Royce's property in Docket No. 168861, and remand.

Before 1957, Walter and Mary Idema owned a parcel of land in Port Sheldon. They quitclaimed their interest in a portion of the south end of the parcel to the Association of the Diocese of Western Michigan (hereafter lot C). The Idemas also granted the church an easement across the Idemas' retained portion.

The Idemas sold the retained northern portion of the original parcel to Julius and Dorothy Duthler. The Duthlers subdivided the northern portion of the parcel into lot A, which was to the north, and lot B, which was between lot A to the north and lot C to the south. The Duthlers then sold lot A to Carson and Elizabeth Donley. The Donleys' buy-sell agreement provided that the driveway "east of the fork" is a permanent easement to the lot to the south of the subject property. Lots B and C are both to the south of lot A. The deed to lot A that was received by the Donleys did not reserve an easement over lot A for lot B's benefit.

The Duthlers and the Donleys also entered into an agreement granting the Donleys a right of first refusal, which stated that if the Duthlers decided to sell lot B, they had to provide the Donleys with written notice and with any documents concerning the sale. The Donleys would then have thirty days to consent to the sale or to purchase lot B themselves. If the Donleys failed to exercise their

rights, the Duthlers were free to sell lot B "on the same terms and conditions and for the price set forth in the document."

On November 1, 1989, the Donleys sold their interest in lot A to plaintiff Stella Royce. They also assigned to her their interest in the agreement granting the right of first refusal.

In 1991, the Duthlers subdivided lot B into lots B-1 and B-2. Lot B-1 fronted on Lake Michigan and lot B-2 backed up to Lakeshore Ave. The easement now ran across only lot B-1.

On June 27, 1992, the Shabazes offered to buy lot B-1 from the Duthlers. A copy of their offer was sent to Royce and was received on July 9, 1991. On August 21, 1991, more than thirty days later, Royce informed the Duthlers that she would not exercise her right of first refusal. The closing date for the purchase of lot B-1 by the Shabazes was set for October 25, 1991.

On October 19, 1991, the Shabazes learned that Royce would block their use of the easement across lot A as a means of access to lot B-1.

On October 25, 1991, Royce filed suit against defendants to quiet title, alleging that neither the Duthlers nor the Shabazes had any easement rights across her property. Royce sought a declaration of defendants' rights and a permanent injunction preventing defendants from using the easement.

The Duthlers then offered the Shabazes an easement across lot B-2 so the Shabazes would have access to lot B-1 from Lakeshore Ave. The Duthlers offered the easement to Royce pursuant to the right-of-first-refusal agreement. Within thirty days, Royce exercised her rights under the agreement and sent the Duthlers a proposed easement. The proposed easement was different from the one offered by the Duthlers in that Royce had the

discretion to establish a driveway on the easement. The Duthlers rejected this proposal.

On August 13, 1992, Royce offered to purchase lot B-1 under the terms extended to the Shabazes pursuant to the first-refusal agreement. The Duthlers rejected the offer. Royce then amended her complaint to add specific performance counts against the Duthlers and the Shabazes to compel the sale of lot B-1 to her pursuant to the agreement granting her a right of first refusal and recorded an affidavit with the Ottawa County Register of Deeds attesting to her right of first refusal in the property.

The Shabazes filed suit against Royce to quiet title and for money damages for tortious interference with a contract and slander of title. The Shabazes sought a declaration from the court that Royce's right of first refusal in lot B-1 terminated when she first declined to purchase the property. The Shabazes also filed a claim against the Duthlers for misrepresentation and breach of express and implied contract. All the actions were consolidated.

On August 24, 1992, the Shabazes moved for summary disposition against Royce with respect to Royce's claim for specific performance on the basis that her right of first refusal to lot B-1 terminated when she declined to purchase B-1 originally. Royce filed a cross motion arguing that her rights under the first-refusal agreement were revived by subsequent events and asking the court to declare her right to exercise her option and purchase lot B-1. The trial court granted the Shabazes' motion, ruling that Royce lost her rights to lot B-1 under the first-refusal agreement and that Royce was barred from claiming specific performance because she did not have clean hands. Royce appeals this ruling in Docket No. 162796.

The trial court considered whether an easement existed over Royce's property for the benefit of B-1 without a jury. At its conclusion, the court held that the Duthlers and the Donleys intended to create an easement over lot A for lot B's benefit, but further held that Royce did not have constructive notice of this intent or actual notice of the easement. The trial court determined that Royce was a bona fide purchaser for value without notice of the easement rights and was entitled to a permanent injunction forbidding defendants from using the easement. The Duthlers appeal this ruling in Docket No. 168861.

A trial of the Shabazes' damage claim for Royce's interference with the Shabazes' contract to purchase lot B-1 is pending the outcome of this appeal.

In the first issue on appeal, Royce challenges the trial court's granting of the Shabazes' motion for summary disposition with respect to her claim for specific performance of the sale of lot B-1 to her under the first-refusal agreement. Royce argues that because the Duthlers changed the terms and conditions of the sale of lot B-1 to the Shabazes after she had declined her option to purchase lot B-1 by offering to give the Shabazes an easement across lot B-2, her rights under the first-refusal agreement were revived. We disagree and hold that regardless of whether Royce's right of first refusal was revived by a material change in the terms of the sale of lot B-1, Royce's unclean hands prevent her from securing the equitable remedy of specific performance.

We review a trial court's grant of summary disposition de novo. *Borman v State Farm Fire & Casualty Co,* 198 Mich App 675, 678; 499 NW2d 419 (1993).

A person seeking equity should be barred from

receiving equitable relief if there is any indication of overreaching or unfairness on this person's part. *Isbell v Brighton Area Schools,* 199 Mich App 188, 190; 500 NW2d 748 (1993). The unfair or over-reaching conduct need not be actionable in any way. It need only be a wilful act that transgresses the equitable standards of conduct. *Stachnik v Winkel,* 394 Mich 375, 386; 230 NW2d 529 (1975).

Royce's delay in notifying the Duthlers and the Shabazes of her intention to block access to lot B-1 until immediately before the closing date forced the Duthlers to change the terms of the sale of lot B-1. Royce's denial of access to the easement resulted in the refusal by the Shabazes' bank and title insurance company to issue the loan or title insurance, which in turn resulted in the extension of the closing date. Also, to avoid liability for attempting to convey a landlocked property, the Duthlers offered the Shabazes an easement across their remaining property, lot B-2, to Lakeshore Avenue.

We will not allow Royce, using the change in the terms of the agreement that was caused by her delay in notifying the parties of her intent to block access to lot B-1, in essence, to reconsider her decision to forgo purchasing lot B-1, especially where she believed from the outset that the Duthlers did not have the right to use the driveway easement to gain access to lot B-1 and knew there was no other access to the parcel. Such behavior transgresses equitable standards of conduct and precludes Royce from obtaining equitable relief in the form of specific performance of the sale of lot B-1.

The trial court did not err in granting the Shabazes' motion for summary disposition and in denying Royce's cross motion for the same.

Next, the Duthlers appeal the trial court's find-

ing that they did not have access to lot B-1 through the easement over Royce's property because Royce was a bona fide purchaser for value. We hold that because Royce had notice of an easement over her property running to lot B-1, she was not a bona fide purchaser for value and was not entitled to block the Duthler's access to the easement.

A person who purchases property without notice of a defect in the vendor's title is a good-faith purchaser. *Michigan Nat'l Bank & Trust Co v Morren,* 194 Mich App 407, 410; 487 NW2d 784 (1992). A person who has notice of a possible defect in a vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser and is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. *Kastle v Clemons,* 330 Mich 28, 31; 46 NW2d 450 (1951). Notice of a defect has been defined by this Court as follows:

> Notice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. [*Schepke v Dep't of Natural Resources,* 186 Mich App 532, 535; 464 NW2d 713 (1990).]

An obvious roadway crossing the property in question puts a purchaser on actual notice that a third party's rights may be involved. *Murphy Chair Co v American Radiator Co,* 172 Mich 14, 28; 137 NW 791 (1912).

The physical characteristics of the property in

question and the documents in the chain of title that were in Royce's possession when she purchased lot A from the Donleys clearly gave her actual notice of the Duthlers' rights in the easement across lot A. The easement consists of an open and obvious paved driveway that runs from Lakeshore Avenue across lot A and forks, with one fork going to Royce's home and the other fork crossing lot B to lot C. The path of the visible easement, together with the fact that Royce knew the easement provided the only driveway onto lot B at the time Royce bought lot A, was sufficient to put Royce on notice that the Duthlers may have rights to the easement. *Murphy Chair Co, supra.*

In addition, surveys of the lots clearly show an easement starting in the northeast corner of lot A that arcs through A, cuts across lot B, and ends on the south-central lot line between lots B and C. Also, Royce's title insurance policy lists two easements of record for ingress and egress and for driveway purposes. Finally, the right-of-first refusal agreement contained a description of lot A that provided the lot was "[s]ubject to an easement for ingress and egress over existing driveway . . . ." These documents, which were seen by Royce at the time of the closing on her purchase of lot A from the Donleys, should have alerted Royce to the possibility that the Duthlers had a right to use the easement to gain access to lot B. An ordinary, honest person would have been prompted to make an inquiry into the matter. *Schepke, supra.*

If Royce had investigated the Duthlers' rights in the easement, we are convinced that she would have discovered that the Duthlers intended to create and reserve for themselves the right to use the driveway for their own benefit when transferring lot A to the Donleys. This conclusion was

arrived at by the trial court, is supported by the evidence, and is not clearly erroneous. While the deed from the Duthlers to the Donleys did not reserve an easement over lot A for the benefit of lot B, the testimony at trial was that the Duthlers and the Donleys discussed the reservation of an easement by the Duthlers, the buy-sell agreement contained an expressed reference to the reservation of an easement by the Duthlers, the Donleys agreed to the reservation of an easement, and the Duthlers frequently used the easement for their own benefit to gain access to their property.

Therefore, because Royce was on notice of the Duthlers' right to use the easement to gain access to lot B and because Royce failed to make adequate inquiry into the matter, she purchased lot A subject to the Duthlers' easement rights. Royce is not entitled to block access to the Duthlers or to the Shabazes, as future assigns, to the driveway.

In light of our holding that Royce's interest in lot A is subject to the Duthlers' rights in the easement across lot A, we find it unnecessary to address the Duthlers' claim that the trial court erred in holding that an easement by implication was not created.

We reverse the trial court's order enjoining defendants from using the easement across lot A and remand for trial of the Shabazes' claim for money damages.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.