# STATE OF MICHIGAN

# COURT OF APPEALS

LINDA A. ZARA,

        Plaintiff/Counter-
        Defendant/Appellee,

v

WELLS FARGO BANK, N.A.,

        Defendant/Cross-Defendant,

and

JONATHAN RUMLEY, also known as JON
RUMLEY, LORI RUMLEY, and JONATHAN
BRUCE RUMLEY FAMILY REVOCABLE
LIVING TRUST DATED FEBRUARY 5, 1999,

        Defendants/Counter-
        Plaintiffs/Cross-Plaintiffs/Third-
        Party Plaintiffs/Third-Party
        Counter-Defendants/Appellants,

v

OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

        Third-Party Defendant/Third-Party
        Counter-Plaintiff.

UNPUBLISHED
June 14, 2018

No. 337380
Wayne Circuit Court
LC No. 16-009300-CH

Before: SAWYER, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Defendants[1] appeal as of right an order granting summary disposition in favor of plaintiff[2] pursuant to MCR 2.116(C)(10). The trial court's order quieted title to certain real property in plaintiff and reformed defendants' covenant deed and related instruments on the basis that the property was transferred by mutual mistake and defendants were not bona fide purchasers. We affirm.

## I. BACKGROUND

At the center of this dispute are several parcels of property located in Grosse Ile, Michigan. Plaintiff and her now-deceased husband owned an 8,400 square foot single family home at 2100 East River Road. Plaintiff also owned a boathouse, dock, and launch immediately across the road (the Waterfront Property). In the early 1990s, plaintiff and her husband split the parcel on which the family home sat, resulting in three parcels: the parcel on which the home was located (the Home Parcel) and two vacant adjacent lots (the Vacant Lots). At some point thereafter, plaintiff and her husband refinanced their mortgage, which applied only to the Home Parcel and not the Vacant Lots.

The mortgage went into default after the death of plaintiff's husband in 2010. In 2011, Wells Fargo National Bank (WFB), as assignee of the original mortgage, foreclosed on the property and obtained a sheriff's deed for the Home Parcel. In 2012, defendants contacted WFB and offered to purchase the property for $550,000 and the parties entered into a purchase agreement. At closing, defendants noted title concerns with the sale of the Waterfront Property, as the apparent intent was that it be included in the sale. Defendants conditionally released WFB from the purchase agreement while retaining the right to purchase the property for $550,000 if WFB obtained good title.

In the meantime, WFB sued plaintiff to secure ownership of the Waterfront Property. Plaintiff and WFB settled the dispute, with entry of a consent order in February 2014 (2014 Consent Order) that transferred ownership of the Waterfront Property to WFB in exchange for payment of $100,000 to plaintiff. Shortly thereafter, the title company notified defendants that the title issues had been resolved and defendants received a copy of the 2014 Consent Order. Upon review, defendants noted that the property description in the 2014 Consent Order also included the Vacant Lots, although the order did not reference the Vacant Lots' tax identification numbers. Defendants were otherwise unaware of any additional details regarding the litigation culminating in the 2014 Consent Order, except that plaintiff had received a settlement of $100,000.

Defendants then entered into a second purchase agreement with WFB subject to their release agreement and offered $550,000 for the property, believing that they were purchasing all

---

[1] While defendants were also counter-plaintiffs, cross-plaintiffs, third-party plaintiffs and third-party counter-defendants in the trial court, for purposes of brevity we will refer to them solely as defendants throughout this opinion.

[2] This Court has received notice that plaintiff passed away on February 20, 2018.

the property included in the 2014 Consent Order. Defendants and WFB closed on the sale in February 2015 and a Covenant Deed was recorded showing defendants as the owners of the Home Parcel (to include the Waterfront Property), as well as the Vacant Lots. After the sale, plaintiff attempted to pay the 2015 taxes on the Vacant Lots and discovered that they had been sold to defendants. Plaintiff consulted WFB and WFB admitted that the Vacant Lots had mistakenly been included in the 2014 Consent Order and, as a result, were inadvertently included in defendants' Covenant Deed and related instruments.

When defendants refused to deed the Vacant Lots back to plaintiff, she filed the instant lawsuit. As relevant to this appeal, plaintiff then moved for summary disposition seeking reformation of the 2014 Consent Order, Covenant Deed, and mortgage. Defendants countered that summary disposition should be entered in their favor under MCR 2.116(I)(2). At the motion hearing, the trial court granted summary disposition in favor of plaintiff. Thereafter, the trial court entered an order quieting title in the Vacant Lots to plaintiff and reforming the 2014 Consent Order, Deed, Covenant Deed, and mortgage. Defendants now appeal as of right.

## II. STANDARDS OF REVIEW

An action to quiet title is equitable and, therefore, the trial court's holdings are reviewed de novo on appeal. *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). This Court also reviews de novo a trial court's decision on a motion for summary disposition. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 378; 761 NW2d 353 (2008). While plaintiff moved for summary disposition pursuant to MCR 2.116(C)(8), (9) and (10), where the trial court considered materials outside the pleadings in deciding the motion for summary disposition, we consider the motion as having been granted pursuant to MCR 2.116(C)(10). *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting*, *LLC*, 322 Mich App 218, 224; ___ NW2d ___ (2017).

"A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Taylor v Laban*, 241 Mich App 449, 451; 616 NW2d 229 (2000).

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999).]

"A motion for summary disposition is properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins Co v Allied Adjusters & Appraisers, Inc*, 238 Mich App 394, 397; 605 NW2d 685 (1999) (citations omitted). A genuine issue of material fact exists "when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Lakeview Commons v Empower Yourself, LLC*, 290 Mich App 503, 506; 802 NW2d 712 (2010) (citation and quotations omitted).

## III. ANALYSIS

"Michigan courts sitting in equity have long had the power to reform an instrument that does not express the true intent of the parties as a result of . . . mistake[.]" *Johnson Family Ltd Partnership*, 281 Mich App at 371-372. Michigan courts have also recognized that a privy to either of the mistaken parties may be subject to reformation of a document. See *Nisbett v Milner*, 159 Mich 337, 343; 124 NW 22 (1909); *Clarke v Bussard*, 220 Mich 304, 308-309; 189 NW 873 (1922). However, in the context of a real estate transaction, reformation is not available if the subject property has been acquired by a bona fide purchaser for value and without notice of defect in the seller's title. *Robertson v Smith*, 191 Mich 660, 665-666, 158 NW 207 (1916).

## A. MUTUAL MISTAKE

Defendants first contend that the trial court erred by concluding that genuine issues of material fact did not exist concerning the mutual mistake of fact between plaintiff and WFB. A mutual mistake of fact means "an erroneous belief, which is shared and relied on by both parties, about a material fact that affects the substance of the transaction." *Ford Motor Co v City of Woodhaven*, 475 Mich 425, 442; 716 NW2d 247 (2006). If the parties agreed to accomplish a particular object by an executed instrument, but the instrument as executed failed to effectuate their intentions, then reformation may be allowed. *Scott v Grow*, 301 Mich 226, 237; 3 NW2d 254 (1942). To obtain reformation, a plaintiff must establish a mutual mistake of fact by clear and convincing evidence. *Casey v Auto Owners Ins Co*, 273 Mich App 388, 398; 729 NW2d 277 (2006).

Viewing the pleadings, affidavits, and other documentary evidence in a light most favorably to defendants, we agree with the trial court that reasonable minds could not differ with regard to whether WFB and plaintiff intended to transfer only the Home Parcel and Waterfront Property to WFB by way of the 2014 Consent Order. As an initial matter, the parties do not dispute that the Vacant Lots were not subject to plaintiff's mortgage with WFB. More significantly, plaintiff averred in her affidavit filed in support of her motion for summary disposition that she did not intend to transfer title to the Vacant Lots by way of the consent order, and WFB, in its Affidavit of Interest, also admitted that the Vacant Lots were "inadvertently included in the [2014 Consent] Order and should not have been made a part of the legal description recited in the Order."[3] Consequently, this mistake in transferring the Vacant Lots is both common and mutual, as the record reflects that the parties only intended to transfer ownership of the Waterfront Property and Home Parcel.

---

[3] Defendants, relying on MCL 565.451d, argue that the trial court erred by considering WFB's Affidavit of Interest because such an affidavit cannot alter substantive rights of a party unless signed by that party. Defendants miss that that statutory provision applies to affidavits recorded in the office of a register of deeds for the purpose of correcting scrivener errors or omissions. WFB's Affidavit of Interest was not filed in a register of deeds for this purpose and, therefore, MCL 545.451d is inapplicable. Instead, the affidavit was filed pursuant to MCL 565.453, which indicates that an affidavit received in a suit affecting real estate is prima facie evidence of the facts contained therein.

Notwithstanding the mutual mistake of plaintiff and WFB in the execution of the 2014 Consent Order, defendants assert that reformation is not available because that remedy is only available to the parties of the conveyance instrument, i.e., the Covenant Deed, and no mutual mistake occurred between defendants and WFB. Defendants cite *Scott*, 301 Mich at 239-240, for the proposition that when the party against whom reformation is sought is not the grantee or grantor, reformation should be denied. However, *Scott* makes no such general pronouncement of law, but states the general rule that reformation is permitted upon a mutual mistake of fact "unless the rights of third parties intervene."[4] *Id*. at 239. Moreover, the rights of defendants as third parties with regard to the reformation of the relevant instruments will be addressed subsequently in this opinion. In sum, we agree with the trial court's assessment that genuine issues of material fact did not exist concerning whether mutual mistake occurred. Where, as here, an instrument does not express the agreement of the parties by reason of mutual mistake, equity may act to correct it through reformation. See *Scott*, 301 Mich at 239.[5] The remaining question is whether defendants are innocent third parties so as to bar reformation.

## B. BONA FIDE PURCHASER

Defendants also contend that where factual disputes existed concerning whether they were innocent bona fide purchasers for value and without notice, it was erroneous on the part of the trial court to reform the 2014 Consent Order, Covenant Deed, and related mortgage. A bona fide purchaser is "one who purchases without notice of a defect in the vendor's title." *Johnson Family Ltd Partnership*, 281 Mich App at 393. Notice may be actual or constructive. *Id*. "A person who has notice of a possible defect in a vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser[.]" *Penrose v McCullough*, 308 Mich App 145, 152-153; 862 NW2d 674 (2014) (quotation marks and citation omitted).

> Notice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead

---

[4] Defendants additionally claim that plaintiff should be judicially estopped from claiming a mutual mistake of fact and seeking reformation due to her failure to read the 2014 Consent Order. However, defendants do not point to any record evidence indicating that plaintiff or her agents failed to read the document such that plaintiff's alleged negligence should bar reformation of the 2014 Consent Order.

[5] Defendants attempt to subvert this well-established rule by arguing that reformation is not permitted if the language of the instrument is plain and unambiguous and that, because the language of the Covenant Deed unambiguously conveys the Vacant lots to defendants, reformation should not be allowed. However, it is well established that equitable reformation is not limited to instances involving ambiguous instruments, but may be applied to unambiguous instruments in furtherance of equity. *Johnson Family Ltd Partnership*, 281 Mich App at 373. Defendants have not explained why the unambiguous Covenant Deed should trump principles of equity.

any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. [*Royce v Duthler*, 209 Mich App 682, 690; 531 NW2d 817 (1995).]

The property that WFB foreclosed on, and obtained a sheriff's deed for, included only the Home Parcel. As a recorded instrument, defendants, at that point, had constructive notice that the subject property did not include the Vacant Lots. See *In re Estate of Crawford*, 115 Mich App 19, 26; 320 NW2d 276 (1982) (recordation of deed provides constructive notice of interest in real estate). When defendants contacted WFB to purchase the property in 2012, they negotiated to purchase the Home Parcel for $550,000. When a question arose at closing regarding title to the Waterfront Property, defendants conditionally released WFB from the First Purchase Agreement, retaining the right to proceed with the sale at the same price once any title issues were resolved. In the interim, and also beginning in 2012, plaintiff, on several occasions, offered to sell defendants the Vacant Lots.

Upon receipt of the 2014 Consent Order, defendants clarified with their realtor and title company by way of electronic mail whether the Vacant Lots would be included in the sale, given that the order omitted the tax identification numbers of the Vacant Lots, but included their legal descriptions. In fact, defendant Jonathan Rumley asked that the legal description be the same as the 2014 Consent Order, so as to include the Vacant Lots, when a prior draft from WFB did not include the lots, reflecting ongoing discrepancies as to whether the lots would be included in the sale. Despite the fact that a problematic description of the property to be sold was evident during the transactions leading up to the execution of the second purchase agreement, as well as plaintiff's continued attempts to sell the Vacant Lots to defendants between 2012 and 2015, defendants entered into a second purchase agreement with WFB in January 2015 for the Home Parcel, Waterfront Property, and Vacant Lots at the same price as the first purchase agreement.[6] The trial court correctly determined that, viewed in the light most favorable to defendants, no genuine issue of material fact exists regarding whether these circumstances should have prompted defendants to make an inquiry into plaintiff's possible right to the Vacant Lots before completing the purchase. Mainly, defendants should have discerned that a defect in WFB's title may have existed given that defendants knew that plaintiff continued to claim the property as her own by offering to sell it to defendants, that the 2014 Consent Order contained omissions as to the Vacant Lots' identification, that the Vacant Lots never secured WFB's loan to plaintiff, and that WFB in drafting the second purchase agreement omitted the Vacant Lots from the legal description.

---

[6] Defendants assert that under the merger doctrine, the prior negotiations and agreements that led to the Covenant Deed cannot be considered in determining whether reformation is proper. Defendants are incorrect. "[T]he merger doctrine does not prevent a court from exercising its equitable power to reform a deed. Therefore, the trial court could properly consider the parties' prior negotiations and agreements when determining whether the deed accurately reflected the intent of the parties." *Johnson Family Ltd Partnership*, 281 Mich App at 377.

Because defendants had inquiry notice, they were under a duty to exercise due diligence to make further inquiries with respect to the ownership of the Vacant Lots. *Royce*, 209 Mich App at 690. Defendants' actions were lacking in this regard. As noted, defendants had numerous email exchanges with their realtor and title company regarding inclusion of the Vacant Lots. These exchanges show only an attempt on behalf of defendants and their agents to ensure that what they believed to be the "correct" legal description be included in the second purchase agreement. The record, however, contains no evidence that defendants ever made an inquiry to WFB or plaintiff *specifically* regarding the true ownership of the Vacant Lots or whether WFB and plaintiff intended to dispose of those lots during the 2013 litigation.[7] Yet, all the facts defendants knew of reasonably directed them to plaintiff and WFB as the most reliable sources to accurately verify the ownership of the property. Accordingly, where the record evidence does not yield any indication that defendants made a reasonable inquiry into the rightful owner of the Vacant Lots before closing on the February 2015 sale, despite having knowledge that would prompt such an inquiry, they are properly charged with notice of the defect and cannot be characterized as bona fide purchasers.[8]

## C. REMAINING ARGUMENTS

Defendants also claim that procedural defects bar this suit. Mainly, defendants argue that a motion for relief from judgment on grounds of mistake must be pursued within one year of the entry of judgment and that plaintiff failed to meet this deadline. See MCR 2.612(C)(1)(a) and (2) (indicating that a motion for relief from judgment must be made within one year from the date of the judgment). However, the present litigation is separate litigation specifically permitted under MCR 2.612(C)(3) and, therefore, the one-year limitation on a motion for relief from judgment is inapplicable. See MCR 2.612(C)(3) ("This subrule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding[.]").

---

[7] In fact, defendants deny any knowledge of what occurred during the 2013 litigation other than that plaintiff received $100,000 in the settlement. This confirms that they took no steps to discover the intended result of the settlement order.

[8] We disagree with defendants' other allegations of error. Defendants, for example, argue that the trial court improperly inquired into whether defendants paid consideration for the Vacant Lots. This alleged error is immaterial, given that the trial court did not predicate its decision on a lack of consideration. Moreover, the question of consideration is not wholly irrelevant to whether equitable reformation is available, given that such relief is not available against an innocent bona fide purchaser, which is one that exchanges *value* (consideration) without notice of the title defect. We similarly disagree with defendants' claim that the trial court improperly granted summary disposition on the basis that defendants could obtain relief against the title company that handled the February 2015 closing. Instead, the trial court's ruling on the record indicates that the court was clarifying that defendants' other claims were not subject to its grant of summary disposition.

Defendants also assert that the same judge that presided over the entry of the 2014 Consent Order had to preside over this matter because that judge was available to act. Defendants cite MCR 2.613(B) (requiring the same judge on a post-judgment motion to preside over the motion to set aside or vacate a judgment). Plaintiff, however, is not asking that the 2014 Consent Order be set aside or vacated in the 2013 litigation; rather she is asking for equitable reformation in entirely separate litigation. MCR 2.613(B) is inapplicable to the present action.

Finally, defendants argue in the alternative that if reformation is proper, they should be returned to the status quo by receiving a refund of taxes they paid on the Vacant Lots. This claim is not properly before this Court. Defendants did not ask for this type of relief in the trial court before summary disposition was granted in plaintiff's favor. Further, at no point, until *after* summary disposition was granted, did defendants ask to be returned to the status quo. After the trial court indicated that it would not consider the issue and directed defendants to file a motion pertinent to this issue, defendants did not file a motion raising and briefing the matter. We therefore decline to address this unpreserved issue. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999).

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ David H. Sawyer
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood

-8-