# STATE OF MICHIGAN

# COURT OF APPEALS

ANTHONY C. PENROSE,

                 Plaintiff-Appellee,

v

FRANK V. MCCULLOUGH and LINDA L.
MCCULLOUGH,

                 Defendants,

and

TODD A. SANFORD and AMY S. SANFORD,

                 Defendants-Appellants.

FOR PUBLICATION
November 18, 2014
9:15 a.m.

No. 316435
Van Buren Circuit Court
LC No. 13-630011-CH

Before: BOONSTRA, P.J., and DONOFRIO and GLEICHER, JJ.

PER CURIAM.

Defendants Todd Sanford and Amy Sanford appeal as of right an order granting summary disposition in favor of plaintiff, Anthony Penrose, in this property easement dispute. Because plaintiff possessed an exclusive easement over the property in question, the Sanfords' later acquisition of an easement over that same property was ineffective, and we affirm.

## I. BASIC FACTS

This case arises out of a dispute over real property located in the Monroe Park Subdivision, in the City of South Haven. Lots 9, 10, and 11 were originally owned by William and Susan Gleeson. The Gleesons sold lot 11 to defendants Frank and Linda McCullough, who already owed lot 6. The McCulloughs, in turn, granted the Gleesons an "exclusive" easement over a portion of their lot 6. Even though the easement was granted *after* the Gleesons transferred their interest in lot 11 to the McCulloughs, the easement document stated that the easement was being granted to the Gleesons as "title holder to Lots 9, 10, and 11."

The McCulloughs subsequently sold lot 11 to the Sanfords and included an easement over lot 6, covering the same area as noted in the easement granted to the Gleesons. Plaintiff,

-1-

Anthony Penrose, purchased lots 9 and 10 from the Gleesons and is their successor in interest to those parcels.

Plaintiff filed suit, alleging that he had an exclusive right to the easement, which precluded the Sanfords from using it. The Sanfords answered and asserted that they were entitled to rely on a valid easement over lot 6. Plaintiff moved for summary disposition under MCR 2.116(C)(10), contending that when the McCulloughs sold lot 11 to the Sanfords, the McCulloughs could not transfer an easement over lot 6. The Sanfords countered by affirmatively moving for summary disposition in their favor under MCR 2.116(I)(2), contending that plaintiff's arguments ignored the plain language of the easement over lot 6 to lot 11. The trial court agreed with plaintiff and granted summary disposition in his favor.

## II. STANDARDS OF REVIEW

"This Court reviews de novo a trial court's ruling on a motion for summary disposition." *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). The motion is properly granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012).

Furthermore, because deeds are contracts, the interpretation of such language is an issue of law, which this Court reviews de novo. *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009).

## III. ANALYSIS

The Sanfords argue that the trial court erred in granting plaintiff's motion for summary disposition because the Sanfords satisfied their burden by producing documentary evidence showing that a genuine issue of material fact existed regarding the parties' respective rights over the easement parcel. Furthermore, the Sanfords maintain that the trial court also erred when it denied their request for summary disposition because their evidence affirmatively proved that they had permanent easement rights over it.

"An easement is the right to use the land of another for a specified purpose." *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). "'[A]n easement may be created by express grant, by reservation or exception, or by covenant or agreement.'" *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 661; 651 NW2d 458 (2002), quoting *State Hwy Comm v Canvasser Bros Bldg Co*, 61 Mich App 176, 181; 232 NW2d 351 (1975). Michigan courts recognize two types of easements: easements appurtenant and easements in gross. *Collins v Stewart*, 302 Mich 1, 4; 4 NW2d 446 (1942). An appurtenant easement attaches to the land and is incapable of existence apart from the land to which it is annexed. *Schadewald*, 225 Mich App 35. "An easement in gross is one 'benefiting a particular person and not a particular piece of land.'" *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 379 n 41; 699 NW2d 272 (2005). Michigan law favors easement appurtenant over easements in gross, and "[a]n easement will never be presumed to be a mere personal right where it can fairly be

construed to be appurtenant to some other estate." *Von Meding v Strahl*, 319 Mich 598, 610; 30 NW2d 363 (1948). In other words, if the easement in question relates in some way to a particular parcel of property, it is nearly always deemed appurtenant. *Myers v Spencer*, 318 Mich 155, 162; 27 NW2d 672 (1947).

Initially, the Gleesons owned lots 9, 10, and 11, and the McCulloughs owned lot 6. On May 9, 2007, the McCulloughs purchased lot 11 from the Gleesons. Approximately a week after lot 11 was transferred to the McCulloughs, the McCulloughs granted an easement over lot 6 in favor of the Gleesons. This deed stated, in pertinent part:

> Grantee is the title holder to Lots 9, 10, and 11 (the "Lots"), Block 8, Monroe Park Subdivision, according to the recorded Plat thereof, City of South Haven, County of Van Buren and State of Michigan.
>
> For $10 and other good and valuable consideration receipt of which is hereby acknowledged, the Grantor hereby grants, bargains, sells, and conveys to the Grantee, its successors and assigns an exclusive perpetual easement across the 10 feet along the North of the South 29 feet of Lot 6, Block 8, Monroe Park Subdivision. *The easement is for parking, storage, a right of way, and for sanitary and other sewer and water lines and other utilities . . . .*
>
> *The Grantee may use the easement for the benefit of any or all of the Lots.*
>
> * * *
>
> *This instrument shall run with the land* . . . and shall be binding upon and inure to the benefit of the Grantor, Grantee and their respective . . . assigns. [Emphasis added.]

It is clear that even if Michigan did not strongly favor easements appurtenant over easements in gross, the easement here is appurtenant. The deed establishes that the grantee's use of the servient estate is tied to the land and is for the express benefit of "any or all of the Lots." Furthermore, the deed recognizes that the easement will "run with the land," which is a trait of an easement appurtenant. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 42; 840 NW2d 775 (2013).

The trial court ruled that as a matter of law no easement was created with lot 11 as the dominant estate. Even assuming that the McCulloughs intended to create an easement with lot 11 being the dominant estate,[1] we agree with the trial court because when the easement was

---

[1] We are aware that the deed granting the easement arguably is ambiguous in this respect because it states that it is granting an easement for the Gleesons, who were described as being the "title holder to Lots 9, 10, and 11," when it is clear that the Gleesons no longer were the title holder to lot 11 after conveying that interest to the McCulloughs.

granted on May 15, 2007, the McCulloughs already owned both lot 6 and lot 11.[2]  It is well established that "'[o]ne cannot have an easement in one's own land.'"  *Von Meding*, 319 Mich at 605, quoting *Dimoff v Laboroff*, 296 Mich 325, 328; 296 NW 275 (1941).   This is because "'[t]he union of dominant and servient estates in the same owners extinguishes prior easements.'"  *Von Meding*, 319 Mich at 605, quoting *Dimoff*, 296 Mich at 328.  Therefore, any attempt by the McCulloughs to create an easement with lot 11 being the dominant estate and lot 6 being the servient estate ultimately failed as a matter of law once they owned both lots.  But there is no question that the easement was successfully created with respect to lots 9 and 10 being the dominant estates.  The two deeds for the conveyance of lot 11 and the granting of the easement were later recorded on the same day on June 5, 2007.

Then in April 2008, the McCulloughs conveyed lot 11 and an easement over lot 6 to the Sanfords.  The deed specified that interest in two different "parcels" were being conveyed:

Parcel 1

Lot 11, Block 8, Monroe Park Subdivision, according to the Plat thereof as recorded in Liber 1 of Plats, Page 2, Van Buren County Records.

Parcel 2

TOGETHER WITH:

An easement over the North 10 feet of the South 29 feet of Lot 6, Block 8, Monroe Park Subdivision, according to the Plat thereof as recorded in Liber 1 of Plats, Page 2, Van Buren County records as recorded in Liber 1484, Page 570.

The fact that an easement was expressly granted is significant.  While easements appurtenant need not be mentioned in deeds in order to be transferred when a dominant estate is transferred, *Myers*, 318 Mich at 166, as discussed above, no easement appurtenant attached to lot 11 previously.  So, the express grant in this deed is the first time that the easement purportedly attached to lot 11.  Thus, on its face, the Sanfords were given an easement over lot 6 as of April 2008.

Then, in December 2012, the Gleesons conveyed their interest in lots 9 and 10, which included the easement over lot 6, to plaintiff.

Plaintiff argues, as the trial court concluded, that because his easement was "exclusive," it precluded the McCulloughs from allowing anyone else to use the same easement.  The May

---

[2] We also note that whether the transfer of lot 11 occurred before or after the grant of the easement makes no difference.  Regardless of the order, after both transfers had been completed, the McCulloughs would be the owner of the dominant estate (lot 11) and the servient estate (lot 6).

2007 deed, which created the easement initially, conveyed "an *exclusive* perpetual easement" in favor of the Gleesons (the owners of lots 9 and 10 at the time). (Emphasis added.)

In determining the scope of an "exclusive easement," we find the Idaho Supreme Court's discussion in *Latham v Garner*, 105 Id 854, 856; 673 P2d 1048 (1993), helpful.

> We begin with the observation that an exclusive easement is an unusual interest in land; it has been said to amount to almost a conveyance of the fee. The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others. . . . [E]xclusive easements are not generally favored by the courts. Nevertheless, if parties agree to do so, exclusive easements can be created. [Citations omitted.]

In the instant case, even though disfavored by courts, the language of the deed conveying the easement to the Gleesons makes it clear that the easement, indeed, is an "exclusive" easement. Thus, only the Gleesons and any subsequent owners of lots 9 and 10 were entitled to use the easement on lot 6.

Importantly, the Gleesons' interest was recorded in the Van Buren County Register of Deeds in May 2007. Michigan is a race-notice state. *Coventry Parkhomes Condo Ass'n v Fed Nat Mortgage Ass'n*, 298 Mich App 252, 256; 827 NW2d 379 (2012). "Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Id.* (quotation marks omitted). MCL 565.29 provides that

> [e]very conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

"Thus, a later interest holder may take priority over a prior conveyed interest only if the later interest holder takes in 'good faith.'" *Coventry Parkhomes Condo Ass'n*, 298 Mich App at 256. And a good-faith purchaser is one who purchases without notice of any defect in the vendor's title. *Oakland Hills Development Corp v Lueders Drainage Dist*, 212 Mich App 284, 297; 537 NW2d 258 (1995). "A person who has notice of a possible defect in a vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser . . . ." *Royce v Duthler*, 209 Mich App 682, 690; 531 NW2d 817 (1995). The term "notice of a defect" has been defined as follows:

> Notice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. [*Id.*, quoting *Schepke v Dep't of Natural Resource*s, 186 Mich App 532, 535; 464 NW2d 713 (1990).]

Furthermore, notice can be actual or constructive. *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). Constructive notice "is notice that is imputed to a person concerning all matters properly of record." *Id.* at 540 (quotation marks omitted).

In the instant case, because the Gleesons' easement was recorded before the Sanfords purchased lot 11, the Sanfords had constructive notice of the Gleesons' pre-existing, *exclusive* easement on lot 6. As a result, plaintiff's exclusive claim, as a successor in interest to the Gleesons, to the easement is superior to Sanford's claim, and the McCulloughs' attempt to expand the usage of the easement was ineffective. Therefore, the trial court properly granted summary disposition in favor of plaintiff.

The Sanfords also argue that the doctrine of laches and the "equities of the case" also required the preservation of the Sanfords' rights over the easement parcel.

> Laches is an affirmative defense based primarily on circumstances that render it inequitable to grant relief to a dilatory plaintiff. The doctrine of laches is triggered by the plaintiff's failure to do something that should have been done under the circumstances or failure to claim or enforce a right at the proper time. The doctrine of laches is founded upon long inaction to assert a right, attended by such intermediate change of conditions as renders it inequitable to enforce the right. But it has long been held that the mere lapse of time will not, in itself, constitute laches. The defense, to be raised properly, must be accompanied by a finding that the delay caused some prejudice to the party asserting laches and that it would be inequitable to ignore the prejudice so created. The defendant bears the burden of proving this resultant prejudice. [*Attorney General v Powerpick Player's Club of Mich, LLC*, 287 Mich App 13, 51; 783 NW2d 515 (2010) (quotation marks, brackets, and citations omitted).]

The doctrine of laches does not apply here because its application is founded upon "long inaction to assert a right." *Id.* Plaintiff bought parcels 9 and 10 from the Gleesons on December 20, 2012. Plaintiff initiated this lawsuit against the Sanfords on March 22, 2013, after the Sanfords had parked their car on the lot 6 easement and prevented plaintiff's construction crew from bringing job materials to the site of his new home. The passage of a mere three months between plaintiff's purchase of lots 9 and 10 and his attempt to enforce his rights to the lot 6 easement can hardly be characterized as "long inaction" to enforce those rights. *Id.* Moreover, the Sanfords did not demonstrate how any delay, including any caused by plaintiff's predecessor in interest, resulted in any prejudice. Therefore, the circuit court did not err when it "disregarded" the doctrine of laches.

Affirmed. Plaintiff, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Mark T. Boonstra
/s/ Pat M. Donofrio
/s/ Elizabeth L. Gleicher

-6-