# STATE OF MICHIGAN

# COURT OF APPEALS

RUBEN AND BARBARA TORRES,

        Plaintiffs-Appellees,

v

WILLIAM TEN EYCK AND
MARY K. TEN EYCK,

        Defendants-Appellants.

UNPUBLISHED
February 9, 2016

No. 324593
Livingston Circuit Court
LC No. 14-028154-CZ

Before: BOONSTRA, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

Defendants appeal by right the trial court's order granting declaratory relief to plaintiffs, finding that defendants had no right to exclude the grantors of an easement or their successors in interest from using the property on which the easement was granted. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The easement at issue concerns access to a driveway that extends from a public highway through plaintiffs' parcel, designated IV-A, and onto defendants' parcel, designated IV-B. Plaintiffs' predecessor in interest once owned both parcels, and with the sale of IV-B to defendants included an easement to allow defendants access to their parcel by way of the portion of the driveway that is located on parcel IV-A. At issue is whether the easement allows defendants to exclude plaintiffs from the driveway entirely.

The easement is described as follows: "An exclusive 66 feet wide private ingress and egress and public/private utility easement for the sole and exclusive use of . . . [defendants' other tract] and/or Parcel [IV-B]." The easement is essentially a gravel driveway that crosses plaintiffs' property to reach defendants' property, providing access to Williamsville Road for defendants' parcel. Earl Sullivan, who along with his wife was plaintiffs' predecessor in interest (and grantor of the easement), testified that his intent, in granting the easement, was to provide easement rights to defendants and no one else, and that it was not his intent to prevent the use of the driveway by himself or subsequent owners of the lot fronting Williamsville Road. After the conveyance, the Sullivans continued to access the driveway without objection from defendants.

Defendant William Ten Eyck testified that he drafted the easement description, and did so intending to establish his right to prevent anyone else from using the property. Ten Eyck regarded the easement as engendering his "private road." Ten Eyck also testified that the easement only prevented vehicles from traversing the driveway, and did not prevent people from walking across it. Ten Eyck stated that he would deem it acceptable for plaintiffs to walk across the driveway occasionally, but not for them to do so regularly, or to drive upon it at all. Once the easement was established, according to Ten Eyck, plaintiffs' predecessor used the property in question only with defendants' permission, and the same was true for plaintiffs, to whom Ten Eyck had granted, and then revoked, permission.

Plaintiff Ruben Torres testified that plaintiffs purchased tract IV-A in September 2013, that the only way to access this lot was by the driveway at issue, and that he would not have purchased the lot without such access. According to Torres, Ten Eyck indicated, after plaintiffs had purchased the lot, his expectation that plaintiffs would use the driveway, and Ten Eyck advised plaintiffs of the location of an extra key to the gate located at the driveway's entrance to Williamsville Road. Because the gate was on plaintiffs' land, Torres believed that plaintiffs owned the gate and that defendants were using it with their permission. According to Torres, Ten Eyck initially showed no qualms about plaintiffs' use of the driveway, but later began asserting that his easement rights included the prerogative to exclude plaintiffs from it entirely.

In time, Ten Eyck changed the lock on the existing gate and installed a second gate, also on plaintiffs' land, to prevent access to the driveway. As a result, plaintiffs sought, and were granted, an injunction against defendants' acting to prevent plaintiffs' use of the driveway pending resolution of this case. At the evidentiary hearing that followed, the trial court interpreted the easement as granting to the owners of lot IV-B the right to use the driveway over lot IV-A for purposes of access, but not restricting the owners of lot IV-A from using the driveway. The court thus held that the easement did not entitle defendants to burden plaintiffs' property with a gate that plaintiffs did not want, or otherwise obstruct plaintiffs' use of the property. This appeal followed.

## II. STANDARD OF REVIEW

The scope of an easement is a question of law that is reviewed de novo on appeal. *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). "However, the extent of a party's rights under an easement is a question of fact, which this Court reviews for clear error." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007) (internal quotation marks and citation omitted). "[T]he proper interpretation of the language in a deed is . . . reviewed de novo on appeal." *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). If the language of the granting instrument is plain and unambiguous, no extrinsic evidence may be considered to determine the scope of the easement. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). However, if the language is ambiguous, a trial court may consider extrinsic evidence in interpreting the granting instrument. *Id*. A trial court's decision to admit and consider extrinsic evidence is reviewed for an abuse of discretion. *Chmielewski v Xermac, Inc*, 457 Mich 593, 613-614; 580 NW2d 817 (1998). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

III. ANALYSIS

The trial court did not err in determining that the language of the easement does not permit defendants to bar plaintiffs from using the driveway.

Deeds are contracts and are to be interpreted as contracts. *In re Ruddell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). A court's obligation in interpreting a contract is to determine the intent of the parties. See *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). Here, the trial court was tasked with determining the scope of defendants' easement.

"An easement is the right to use the land of another for a specified purpose." *Bowen v Buck & Fur Hunting Club*, 217 Mich App 191, 192; 550 NW2d 850 (1996). "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald*, 225 Mich App at 35, citing *Morrill v Mackman*, 24 Mich 279, 284 (1872). "[T]he owner of the servient estate may make any use of the premises not inconsistent with the easement." *Harr v Coolbaugh*, 337 Mich 158, 165-66; 59 NW2d 132 (1953). This normally includes the right of the owner of the burdened property to use the easement itself. See *Murphy Chair Co v American Radiator Co*, 172 Mich 14, 28-29; 137 NW 791 (1912). "The owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Schadewald*, 225 Mich App at 36.

Defendants argue that the use of the words "sole" and "exclusive" indicates that they may bar plaintiffs from using the driveway. Cases defendants rely upon are distinguishable and in some instances support the trial court's contrary position. For example, *Heydon v MediaOne of Southeast Mich, Inc*, 275 Mich App 267; 739 NW2d 373 (2007), involved the right of the holder of a utility easement (an easement in gross) to apportion that easement and thus has little relevance to the case at bar, which concerns an appurtenant easement. See *Myers v Spencer*, 318 Mich 155, 162, 27 NW2d 672 (1947). Further, this Court in *Penrose v McCullough*, 308 Mich App 145; 862 NW2d 674 (2014), cited with approval the Idaho Supreme Court's decision in *Latham v Garner*, 105 Idaho 854, 856; 673 P2d 1048 (1983), in determining the scope of an exclusive easement. The *Latham* Court held that, while an exclusive easement that bars even the servient estate from use of the easement is possible, such as easement must "clearly and specifically provide for exclusivity in the dominant estate." See *Latham*, 105 Idaho at 857 (citations from numerous jurisdictions omitted). Thus, "[t]he mere use of the word 'exclusive' in creating an easement is not, in and of itself, sufficient to preclude use by the owner of the servient estate." *Id*. Indeed, the phrase "exclusive use" can be interpreted in numerous reasonable ways:

> The phrase "exclusively for their use" lends itself, without contortion, to a number of interpretations. The instrument could be interpreted as (1) the grant of an easement right of way to the grantee, the defendants herein, to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or, (3) as the grant of a fee simple estate to the grantee. Thus, the instrument is reasonably subject to conflicting interpretations and as such is ambiguous. [*Id*. at 858.]

We do not find that the mere use of the word "sole" in the granting instrument significantly alters this analysis, and defendants provide no support for a contrary conclusion. Instead, we conclude that the language of the granting instrument was sufficiently ambiguous regarding its scope to permit the trial court to consider extrinsic evidence in its interpretation. See *Little*, 468 Mich at 700. Although *Latham* is not binding on this Court, we find its reasoning persuasive. *Ammex, Inc v Dep't of Treasury*, 273 Mich App 623, 639 n 15; 732 NW2d 116 (2007).[1]

Defendants conceded at trial that, at least in some limited capacity, the grantors remained at liberty to traverse the area that is the subject of the easement. Although defendants were inconsistent in this regard, having asserted also that the easement left them with a "private road," there was, minimally, an acknowledgement that the easement did not render the driveway completely exclusive to defendants or their parcels. Further, Sullivan, as grantor of the easement, testified that he did not intend the easement to bar owners of the servient estate from using the driveway. The trial court did not err in concluding that the easement did not preclude the use of the driveway by the owners of the servient estate. To hold otherwise would effectively convert an exclusive (as to any other easement-holders) easement into a fee simple interest in the easement property, which we decline to do. See *Mich Dep't of Natural Resources v Carmody-Lahti*, 472 Mich 359, 373; 699 NW2d 272 (2005) (noting that the grant of an interest in use of land, rather than a grant of the land itself, indicates the conveyance of an easement rather than a fee simple estate).

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

[1] We note that the unpublished case that defendants cite, *Proto-Cam v 940 Monroe*, unpublished opinion per curiam of the Court of Appeals, issued December 16, 2004 (Docket No. 251387), also cited *Latham* with approval. But the easement at issue in *Proto-Cam* contained much more specific language excluding the grantor from use of the property, and the extrinsic evidence supported that conclusion; thus *Proto-Cam*, in addition to being non-binding, MCR 7.215(C)(1), does not aid defendants' position.