*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY JAMES BERG,

        Plaintiff/Counterdefendant-Appellant,

and

SANDY SHORES 2834, LLC,

        Counterplaintiff/Third-Party
        Defendant-Appellant,

and

DAVID W. BRAUER,

        Counterplaintiff/Third-Party
        Defendant,

v

FOX POINT BEACH ASSOCIATION, INC.,

        Defendant/Counterplaintiff/Third-
        Party Plaintiff-Appellee.

UNPUBLISHED
August 22, 2024

No. 365502
Livingston Circuit Court
LC No. 21-031311-CH

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

PER CURIAM.

        Plaintiff/counterdefendant, Gregory James Berg, along with counterplaintiff/third-party defendant Sandy Shores 2834, LLC (collectively, "plaintiffs"), appeal by leave granted[1] a decision

---

[1] *Berg v Fox Point Beach Ass'n, Inc*, unpublished order of the Court of Appeals, entered September 5, 2023 (Docket No. 365502). Counterplaintiff/third-party defendant David W. Brauer was dismissed as a party to this appeal by stipulation. Thus, the recitation of the facts herein will mainly focus on the claims made by Berg and Sandy Shores. To the extent necessary, and for ease

-1-

of the trial court granting summary disposition to defendant/counterplaintiff/third-party plaintiff Fox Point Beach Association, Inc., under MCR 2.116(I)(2). We reverse and remand.

## I. FACTUAL BACKGROUND

Berg owns two residential properties in the Fox Point Beach Subdivision near Portage Lake in Livingston County, Michigan. Sandy Shores owns one residential property in the same subdivision. The subdivision was platted in December 1926, when the lots that make up the subdivision were conveyed from Maro M. Read to the Portage Lake Land Company. The 1926 plat for the subdivision additionally dedicated certain "common areas" to use by lot owners, including a beach, park, canals, lagoons, and roads. Each lot was originally encumbered by a restriction stating that "[n]o building of any kind shall be erected on the property herein conveyed except a private family dwelling to be used for residential purposes only, and one single garage." Relevant to this appeal, the dedication was left out of the chain of title from approximately 1953 onward.

This appeal focuses on whether plaintiffs can use their properties as short-term rental homes, and whether title to the common areas can be conveyed to or owned by a single person or entity. There are two major entities involved in this determination. The first is defendant, the Fox Point Beach Association (the Association), which is a voluntary homeowner's association (HOA) that manages the subdivision. The Association was incorporated in 1944. The other is the Portage Lake Land Company (Portage), which developed the Fox Point Beach Subdivision. Portage is no longer in operation today. In 1962, Portage issued a resolution that extended its corporate existence for 30 years from November 14, 1962. But in 1973, Portage filed a certificate of dissolution. The certificate of dissolution was signed by John R. Laird, in his capacity as vice president. Portage is not a party to this lawsuit, given that the company no longer exists.

In December 2011, Laird issued a quitclaim deed to Thomas F. Ehman that conveyed Portage's "interest in all land including that covered by the waters of Portage Lake and its canals, inlets, and outlets[.]" Laird signed the deed as Portage's "Last Remaining Officer." The parties appear to agree that this is the conveyance that covered Portage's interest in the common areas of the subdivision, which are part of the dispute on appeal. In 2020, Ehman executed a quitclaim deed conveying all of the common areas in the subdivision to the Association. Ehman is identified in the deed as a successor-in-interest to Portage. Also in 2020, the Association adopted new rules and regulations restricting short-term renters, defined as those who rented properties for 28 days or less, from using the common areas. In September 2020, the Association issued another set of rules indicating that homeowners could not rent their homes to short-term renters at all. In layman's terms, this essentially means that homeowners could not use their homes as Airbnb-type rentals, and that only the residents of the properties could use the common areas in the subdivision.

In November 2021, Berg filed a complaint against the Association. In it, he requested declaratory and injunctive relief, asking the trial court to

---

of reference, we will refer to Brauer as part of the "plaintiff" side of this dispute, along with Berg and Sandy Shores.

enjoin[] the Association from further interference with use by Plaintiff of the Residences, including incidental use of Common Areas, for short-term rentals or other lawful purposes; declar[e] that the Restrictions are expired and unenforceable; declar[e] that short-term rentals are not prohibited by the Restrictions or other documents in the chain of title; and granting such other and further relief as the Court deems just and appropriate under applicable law[.]

In December 2021, the Association answered Berg's complaint and filed a counterclaim and third-party complaint against Berg, Sandy Shores, and counterplaintiff/third-party defendant David W. Brauer. In Count I, the Association asked the court to enter an injunction prohibiting plaintiffs from using their properties as short-term rentals. In Count II, the Association brought a claim of nuisance, stating that plaintiffs' rental activity was causing disturbances in the neighborhood. In Count III, the Association requested that the court quiet title to the common areas in its favor.

In June 2022, Berg filed a motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim) and (C)(10) (no genuine issue of material fact). He argued that the Association could not exercise exclusive ownership of the common areas, noting that the original plat for the property did not indicate that Portage, as the developer of the subdivision, retained any interest or property rights in the common areas. Berg further argued that Portage dissolved in 1973 and thus could not have validly conveyed the property to Ehman in 2011, meaning that Ehman in turn could not have validly conveyed any interest in the common areas to the Association in 2020. According to Berg, once a corporation dissolves and winds up its affairs, it ceases to exist. Thus, Portage ceased to exist well before the 2020 conveyance. Berg asked the court to verify that he was not subject to the Association's jurisdiction and did not have to abide by HOA rules.

Berg further argued that the building and use restrictions from the 1926 property deeds did not operate to bar him from using his properties as short-term rentals because the restriction did not remain in the chain of title for more than 40 years. Berg supported this claim by noting that under the Marketable Record Title Act (MRTA), MCL 565.101 *et seq.*, "any person . . . who has an unbroken chain of title of record to any interest in land for . . . forty years . . . shall at the end of the applicable period be considered to have a marketable record title to that interest[.]" Berg also pointed out that the Association permitted short-term rentals as recently as 2019, all of which suggested that the Association could not now rely on the chain of title to prohibit short-term rentals or other residential use restrictions.[2]

The Association responded that it was the legal owner of the common areas at issue. According to the Association, even if a corporation is dissolved, it remains the owner of whatever assets it held while operative, including real property. As part of the process of winding up its affairs, a dissolved corporation has the responsibility to sell or transfer assets over time, which it did by transferring the property to Ehman in 2011. The Association also noted that Portage resolved to extend its corporate existence through November 14, 1992. It conveyed the property

---

[2] Sandy Shores and Brauer filed their own motions for summary disposition, making essentially the same arguments regarding corporate dissolution and the MRTA. To avoid confusion or redundancy, we have only summarized the arguments most relevant to this appeal once.

to Ehman in 2011, approximately 19 years later. Thus, said the Association, the 38-year wind-up period argued by plaintiffs was inaccurate.

The Association added that the MRTA did not apply to prevent the enforcement of use restrictions on the property. The Association contended that the MRTA could only extinguish the restrictions if notice of said restrictions was not given within five years of March 29, 2019, per an amendment to the MRTA. According to the Association, "[t]he Restrictions remain on title to the Subdivision, are not extinguished and, as such, remain enforceable." The Association denied Berg's allegation that it had allowed any subdivision properties to be used for "non-residential" purposes or waived any use restrictions set forth in the property deeds at issue. The Association asked the court to grant summary disposition in its favor under MCR 2.116(I)(2) (nonmoving party entitled to summary disposition).

A hearing on the motions was held in December 2022, and the parties largely argued consistent with their briefs. The trial court did not expressly address plaintiffs' argument that the MRTA extinguished the restrictions on the property, but did find that regardless of whether the specific use restriction at issue was included their deeds, plaintiffs were on record notice that the restriction existed, given that it had been in the original 1926 deed to each property. The court further found that Portage's corporate dissolution in the 1970s did not nullify the restrictions or prevent the Association from claiming a property interest in the common areas of the subdivision. The court opined that title to the property vested in Laird, as the last remaining officer of Portage, upon Portage's dissolution. The court thus determined that the conveyances in 2011 and 2020 were proper, and quieted title to the common areas in favor of the Association. The court granted summary disposition to the Association under MCR 2.116(I)(2).

Plaintiffs moved for reconsideration, which was denied by the trial court. Plaintiffs subsequently applied for leave to appeal in this Court, which was granted. *Berg v Fox Point Beach Ass'n, Inc*, unpublished order of the Court of Appeals, entered September 5, 2023 (Docket No. 365502). As noted above, this court approved a stipulation to dismiss the appeal as to Brauer only.[3] We now address the remaining plaintiffs' issues on direct appeal.

## II. ANALYSIS

### A. STANDARD OF REVIEW

Plaintiffs moved for summary disposition under MCR 2.116(C)(8) and (C)(10). The trial court granted summary disposition to the Association under MCR 2.116(I)(2). This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under MCR 2.116(C)(10) "tests the factual sufficiency of a claim." *Id*. at 160 (citation and emphasis omitted). In considering a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. The motion "may only be granted when there is no genuine issue of material fact." *Id*. "A genuine issue of material fact

---

[3] *Berg v Fox Point Beach Ass'n, Inc*, unpublished order of the Court of Appeals, entered December 6, 2023 (Docket No. 365502).

exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted). As further explained in *El-Khalil*:

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [*Id*. at 159-160 (citations omitted).]

However, if the court does not find summary disposition in favor of the moving parties is proper under either of these subsections, it may instead "award summary disposition to the opposing party under MCR 2.116(I)(2)[.]" *Hambley v Ottawa Co*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 365918); slip op at 3. Additional questions of law regarding the deeds and the application of the MRTA are reviewed de novo by this Court. *Penrose v McCullough*, 308 Mich App 145, 147; 862 NW2d 674 (2014).

## B. CONVEYANCE OF COMMON AREAS

Plaintiffs argue that the trial court erred by finding that the conveyance of the common areas of the subdivision from Laird to Ehman in 2011, and then from Ehman to the Association in 2020, were valid. We agree.

Initially, plaintiffs contend that they possess an irrevocable easement to the common areas, which prevents the Association from barring access or otherwise exercising exclusive control over the common areas. The plat dedication for the subdivision was recorded in 1926. Dedications of land that occurred before the Subdivision Control Act, 1967 PA 288,[4] took effect in 1968, "convey at least an irrevocable easement in the dedicated land." *Little v Hirschman*, 469 Mich 553, 564; 677 NW2d 319 (2004). There is no dispute that the 1926 plat dedication here took place before 1967 PA 288 was enacted. Thus, plaintiffs are correct that they have an irrevocable easement that covers the common areas of the subdivision.

Whether the dedication conveys more than an irrevocable easement—for example, a fee simple interest in the property—is a broader question, and depends on the original plattor's intent. *Dobie v Morrison*, 227 Mich App 536, 540; 575 NW2d 817 (1998). Plaintiffs do not present evidence on appeal to support the notion that Portage intended to grant a fee simple interest in the common areas; indeed, they hardly argue such, instead contending that their irrevocable easement rights are sufficient to show that the Association cannot exercise exclusive control or obtain exclusive ownership of the common areas. This Court is not required to make an argument that plaintiffs themselves have not made or substantiated. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). Thus, we decline to further address whether plaintiffs have, or could be granted, a fee simple interest in the common areas.

---

[4] The Subdivision Control Act of 1967 is now referred to as the Land Division Act, 1996 PA 591, MCL 560.101 *et seq*.

As earlier noted, the bulk of plaintiffs' argument focuses on the contention that the conveyance of the common areas of the subdivision from Portage to Ehman, and then from Ehman to the Association, were invalid. This issue turns on whether the 38-year period between 1973, when Portage dissolved, and 2011, when Laird conveyed the property to Ehman, is an appropriate corporate wind-up period. We conclude that it was not. A corporation that has dissolved must wind up its corporate affairs (i.e., the "wind-up period"), within a reasonable amount of time. *Flint Cold Storage v Dep't of Treasury*, 285 Mich App 483, 497; 776 NW2d 387 (2009). "What constitutes a reasonable time is generally a question of law for the court." *Id*. at 498. However, in *Flint Cold Storage*, this Court found that 32 years was not a reasonable wind-up period. See *id*. ("We can scarcely, if at all, envision a case in which a 32–year winding up period might be considered reasonable."). Thus, it stands to reason that the 38-year wind-up period at issue in this case is likewise unreasonable. Portage dissolved in 1975 and has had no corporate presence or dealings since that time. No evidence has been presented to explain why such a long wind-up period would be reasonable. Without any such explanation, the conveyance of property formerly owned by the corporation in 2011, nearly 40 years later, cannot possibly be considered part of a reasonable wind-up period. The trial court erred as a matter of law by concluding otherwise.

The question that therefore remains is whether the conveyance of the property was valid. According to this Court, "a dissolved corporation's remaining assets pass to its shareholders as beneficial owners once liquidation and winding up is complete and all creditors have been satisfied." *Id*. at 501. Portage's shareholders have not been identified, nor is it clear that Laird had authority to transfer property on behalf of the corporation or its shareholders. Thus, it appears that the property legally passed to Portage's shareholders when Portage dissolved, and that questions of fact remain regarding whether the conveyance purporting to grant ownership of the common areas to the Association was valid.

In sum, plaintiffs retain an irrevocable easement to the common areas of the subdivision that cannot be subverted or extinguished by the Association; thus, the Association cannot preclude property owners, as residents of the subdivision, from utilizing those common areas. Further, questions of fact remain regarding whether title to the property was lawfully conveyed to the Association. For these reasons, summary disposition was improperly granted to the Association under MCR 2.116(I)(2).

C. MARKETABLE TITLE

Plaintiffs next argue that the MRTA applies and that the use restrictions originally set forth in the 1926 deeds have been extinguished because they have not been included in the chain of title for over 40 years. We agree.

The 1926 deed restriction at issue in this matter states that "[n]o building of any kind shall be erected on the property herein conveyed except a private family dwelling to be used for residential purposes only, and one single garage." The last time the restriction appears in the chain of title for the Berg property is 1953. Likewise, the last time the restriction appears in the chain of title for the Sandy Shores property is 1954. Berg obtained his properties by warranty deed in 2012 and 2018. Sandy Shores obtained its property in 2018. Thus, on the record presented to this Court, it would appear that the use restriction at issue has not been in the chain of title for plaintiffs' properties in approximately 60 years.

Under section 1 of the MRTA, MCL 565.101, a property owner with an unbroken chain of title of record to any interest in land for 40 years has a marketable record title to that interest. MCL 565.106 additionally provides:

> This act shall be construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons dealing with the record title owner, as defined in this act, to rely on the record title covering a period of not more than . . . 40 years for other interests prior to the date of such dealing and to that end to extinguish all claims that affect or may affect the interest dealt with, the existence of which claims arises out of or depends upon any act, transaction, event, or omission antedating . . . the 40-year period for other interests, unless within the . . . 40-year period for other interests a notice of claim as provided in section 3 has been filed for record. The claims extinguished by this act are any and all interests of any nature whatever, however denominated, and whether the claims are asserted by a person sui juris or under disability, whether the person is within or outside the state, and whether the person is natural or corporate, or private or governmental.

In simple terms, if chain of title is unbroken in 40 years, the owner has marketable title and owns the land free from any interests predating that 40-year time period. See *Fowler v Doan*, 261 Mich App 595, 602; 683 NW2d 682 (2004). If the MRTA applies here, then the use restriction at issue would be extinguished. This is what plaintiffs argue, and it does in fact appear to be the case. The use restriction has not been in plaintiffs' deeds since the 1950s—well over the 40-year period for preserving a property interest or restriction per the statute. Thus, we conclude that plaintiffs have marketable title free and clear of any restrictions, per the plain terms of the MRTA.

However, the Association points out that the MRTA was amended, effective March 29, 2019, to add a grace period for preserving property interests. 2018 PA 572. The amendment stated that an interest in property can be preserved "by filing for record within 5 years after March 29, 2019 or during the 20-year period for mineral interests and the 40-year period for other interests, a notice in writing, verified by oath, setting forth the nature of the claim[.]" 2018 PA 572. To benefit from the amendment, the Association would have had to file a written notice regarding the use restriction with the county register of deeds within five years of March 29, 2019, given that the 40-year period for preserving a right to other interests has long since passed. The Association argues that under the 2019 version of the statute, the use restriction has been preserved. This is not accurate, as there is no indication that the Association has filed the appropriate notice under MCL 565.103. Absent any evidence that the Association filed the proper notice, the MRTA operates to extinguish the use restriction at issue.[5]

---

[5] While this case was pending on appeal, the MRTA was amended again, effective March 28, 2024. Under the more recently amended version of the act, "an interest, claim, or charge may be preserved and kept effective by filing for record on or before *September 29, 2025* or during the 20-year period for mineral interests and the 40-year period for other interests[.]" MCL 565.103(1) (emphasis added). Whether the Association could elect to file a notice within the appropriate statutory period under the 2024 version of MCL 565.103(1) was not raised before this Court.

The Association also cites MCL 565.104(1)(e) of the MRTA, which states that the act cannot be applied to "[b]ar or extinguish any land or resource use restriction[.]" However, the language cited by the Association in support of its argument was added by amendment, effective March 29, 2023. See 2022 PA 235. The Association makes no argument as to why the amended version of the statute should apply retroactively to this action, which commenced before March 29, 2023. See *Buhl v Oak Park*, 507 Mich 236, 243-244; 986 NW2d 348 (2021) (stating that amended statutes generally do not apply retroactively unless there is a clear legislative intent indicating that they should). This argument thus lacks merit.[6] Ultimately, the trial court erred by concluding that the MRTA did not apply to extinguish the use restrictions first set forth in the 1926 deeds to plaintiffs' respective properties. Summary disposition was improperly granted to the Association under MCR 2.116(I)(2).

## III. CONCLUSION

The trial court erred by finding that title to the common areas properly passed to the Association. The 38-year wind-up period at issue in this case was not reasonable, and by all accounts, it would appear that the property passed to the corporation's shareholders, and not solely to Laird, when the corporation dissolved. Further factual development is necessary to determine whether the conveyance from Laird to Ehman, and likewise from Ehman to the Association, was valid and enforceable. The trial court additionally erred by finding that the MRTA does not apply to this matter. The MRTA extinguished the use restriction in plaintiffs' respective deeds, given that the restriction has not been included in the chain of title for more than the statutory 40-year period. The Association can no longer enforce the restriction to prohibit property owners from using their homes as short-term rentals.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michelle M. Rick

---

[6] Plaintiffs also briefly argue that the Association lacks standing to enforce the use restriction. Since we conclude that the use restrictions are no longer enforceable, the question regarding the Association's standing is moot. See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013) ("A matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy."). Even if this were not the case, plaintiffs' argument is without merit, as HOAs generally have standing to enforce deed restrictions. See, e.g., *Aldrich v Sugar Springs Prop Owners Ass'n, Inc*, 345 Mich App 181; 4 NW3d 751 (2023) (finding that HOA had standing to enforce restrictive covenant limiting use of property to residential purposes); *Highfield Beach v Sanderson*, 331 Mich App 636; 954 NW2d 231 (2020) (finding condominium association bylaw prohibiting short-term rentals enforceable).