*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOUTHFIELD SOLUTIONS, LLC,

        Plaintiff/Counterdefendant-Appellant,

v

ESTELL MANOR, LLC, ROPAL ANDERSON, and
PRECIPICE INVESTMENTS, LLC,

        Defendants/Counterplaintiffs/Cross-
        Plaintiffs/Third-Party Plaintiffs-
        Appellees,

and

KERRY LAMBKIN,

        Defendant/Counterplaintiff-Appellee,

and

42 FULLERTON, LLC, RDS GROUP, and PAUL
KENDRICK,

        Defendants-Appellees,

and

PETER ADAMO and GLOBAL PREMIER ASSET
SERVICING,

        Defendants/Cross-Defendants,

and

EYAL BOHADANA,

        Defendant/Third-Party Defendant,

and

UNPUBLISHED
April 16, 2025
11:37 AM

No.  368038
Wayne Circuit Court
LC No.  20-011421-CH

LEGACY ONE INVESTORS GROUP, LLC, and
STERLE SCOTT,

              Defendants.

_____

Before:  YATES, P.J., and O'BRIEN and FEENEY, JJ.

PER CURIAM.

In this property action, plaintiff-appellant, Southfield Solutions, LLC, appeals as of right the September 15, 2023 circuit court order granting plaintiff's motion for judgment against the defendants who are not parties to this appeal;[1] however, plaintiff is actually challenging the June 22, 2022 circuit court order, which granted summary disposition in favor of the defendants who are parties to this appeal.[2] We affirm. [3]

## I. FACTS

This quiet-title action concerns a property located at 2740 Fullerton Avenue in Detroit, Michigan, and arises out of plaintiff's claim of a superior property interest against several defendants.  The chain of title for the property is as follows:

- On July 16, 2014, a quitclaim deed from the Wayne County Treasurer to Global Premier Asset Servicing (Global-New York) was signed and recorded.

- On March 25, 2015, a quitclaim deed from Global-New York to Eyal Bohadana was signed, and on July 9, 2018, it was recorded.

_____

[1] The defendants who are not considered appellees to this appeal are Peter Adamo, Global Premier Asset Servicing, Eyal Bohadana, Legacy One Investors Group, LLC, and Sterle Scott.

[2] The defendants who are considered appellees to this appeal are Estell Manor, LLC, Ropal Anderson, Precipice Investments, LLC, Kerry Lambkin, 42 Fullerton, LLC, RDS Group, and Paul Kendrick.

[3] On appeal, defendant-appellee, 42 Fullerton, LLC, confusingly objects to this Court's jurisdiction, stating as follows: "As outlined from the Trial Court's June 22, 2022, Order, this order was a final order and resolved all claims between the parties.  As such, this Court lacks jurisdiction to hear this appeal."  Under MCR 7.203(A)(1), this Court has jurisdiction of an appeal of right filed by an aggrieved party from a final judgment or order.  The June 22, 2022 order granting summary disposition stated that it was a final order as to the appellees in this appeal, and the September 15, 2023 order granting judgment also stated that it was a final order closing this case; therefore, regardless of which order plaintiff appealed, this Court has jurisdiction to hear this appeal.  MCR 7.203(A)(1).

- On October 10, 2017, a quitclaim deed from Global Premier Asset Servicing a Michigan Corporation (Global-Michigan)[4] to Ropal Anderson was signed, and on October 11, 2017, it was recorded. The parties agree that this was a fraudulent transfer.

- On October 24, 2017, a quitclaim deed from Anderson to Estell Manor, LLC was signed, and on November 3, 2017, it was recorded.

- On December 30, 2018, Bohadana executed a purchase agreement to sell the property to Anderson for $50,000.00. On January 2, 2019, a warranty deed from Bohadana to Anderson was signed, but it was *never* recorded.

- On March 12, 2020, a quitclaim deed from Estell Manor to Precipice Investments, LLC was signed, and on March 23, 2020, it was recorded.

- On March 30, 2020, Bohadana executed a purchase agreement to sell the property to plaintiff for $50,000. On May 4, 2020, plaintiff recorded a claim of interest under the Marketable Record Title Act (MRTA), MCL 565.101 *et seq*.[5]

- On June 15, 2021, a warranty deed from Precipice to Legacy One Investors Group, LLC was signed, and on July 6, 2021, it was recorded. Also on June 15, 2021, a warranty deed from Legacy One to 42 Fullerton, LLC was signed, and on July 7, 2021 it was recorded.

- On September 14, 2021, a warranty deed from Bohadana to Precipice was signed, and on September 21, 2021, it was recorded.

To clarify, Bohadana—who was in the nonfraudulent chain of title—attempted to sell the property three times: (1) first, to Anderson; (2) second, to plaintiff; and (3) third, to Precipice.

In November 2020, plaintiff filed a complaint asserting a claim, *inter alia*, for quiet title against the following defendants: Estell Manor; Peter Adamo; Anderson; Global-Michigan, and Precipice. In January 2022, plaintiff added the following defendants to the complaint: Bohadana; Legacy One; Sterle Scott; 42 Fullerton; Kerry Lampkin; RDS Group, LLC; and Paul Kendrick.

In January, 2022, Estell, Anderson, and Precipice[6] moved for summary disposition pursuant to MCR 2.116(C)(8) and MCR 2.116(I)(1), arguing that: (1) because Bohadana never delivered an executed quitclaim deed to plaintiff, plaintiff's claim to quiet title fails; (2) even if

---

[4] It appears that Global-Michigan was a fraudulent corporation run by Peter Adamo, who eventually defaulted in this case.

[5] Notably, plaintiff's claim of interest was improperly recorded under MCL 565.101 *et seq*., which had no application to this case. The MRTA applies to claimants with "an unbroken chain of title of record to any interest in land for 20 years for mineral interests and 40 years for other interests . . . ." MCL 565.101. This statute is clearly inapplicable to the facts of this case.

[6] When referring to the summary disposition motions or decisions, we use the term "defendants" to refer to Estell, Anderson, and Precipice.

plaintiff did have a colorable claim to title, the defendants had the same claim long before plaintiff; and (3) the chain of warranty deeds completed the chain of ownership to 42 Fullerton. Plaintiff responded, arguing that the defendants failed to meet their burden of proof because plaintiff's purchase agreement with Bohadana was enforceable, and at the time that plaintiff recorded its interest, there were no other valid recorded interests. Thereafter, plaintiff also moved for summary disposition, pursuant to MCR 2.116(C)(10), and defendants responded; the parties generally made the same arguments that were made under defendants' motion for summary disposition.

In March 2022, the circuit court denied both motions for summary disposition, reasoning as follows: "Oh, the tangled webs men weave. This case has so many genuine issues of material fact that the competing motions for summary disposition are denied. This case is ripe for a fact finder to sort this sordid tale of property ownership out." Defendants subsequently moved for reconsideration.

A hearing on defendants' motion for reconsideration was held in June 2022. The circuit court asked plaintiff if there was ever a deed transferring between Bohadana and plaintiff in 2020, and plaintiff responded that "the deed was transferred to be held in escrow" with Detroit Title. The parties agreed that the original deed never made it to Detroit Title, but a copy of the deed did. Plaintiff further stated that in April 2020, plaintiff put "[$]25,000 in escrow with Detroit Title, which is still there as of today." Plaintiff acknowledged that within its purchase agreement with Bohadana, there was a contingency statement regarding Estell.

Notably, 42 Fullerton argued that: (1) plaintiff was not a bona fide purchaser, (2) plaintiff never received a deed to the property, and (3) 42 Fullerton was the last record title holder for the property.

At the end of the hearing, the circuit court granted defendants' motion for reconsideration and corresponding motion for summary disposition, reasoning, in part, as follows:

> And at the end of the day there's a party that has no deed, no closing, very minimal transfer, if anything, of consideration other than a deposit that should be returned forthwith from the title company [who] wants to undo a $650,000 transaction of the parties whose predecessor in interest include those that paid the taxes, maintained the property, boarded it up, dealt with the City of Detroit, got it off the foreclosure list, got it off the demolition list, and now wants to insert itself and claim an interest and undo all of that down the line.

> And the simple fact is that entity, [plaintiff], is not a bona fide purchaser for value because, well for a number of reasons. Primarily because it knew of the third-party, in this case Estell/Anderson's interest in the property. The transaction between Bohadana and [plaintiff], it never closed.

> This claim of interest . . . was under the Michigan Record Title Act which doesn't permit this Plaintiff to perfect a claim when the statute under which the claim is being filed doesn't apply.

> The issue of race notice, it's not an issue, it's a red herring insofar as the 2018 transaction from Bohadana to Anderson, although the deed was produced

-4-

after discovery, or during discovery and after the transaction, the fact of the matter remains that [plaintiff] was on notice of this claim and this chain of title.

And as to the allegations of fraud, I'm just trying to tie up the loose ends, they're allegations and nothing more. There's, you can say a deed is backdated 100 times, if you have no evidence that a deed was backdated or that that transaction was somehow fraudulent, well it just remains that, an allegation. It doesn't necessarily make it fraud if it appears in black and white or is argued over and over.

As a result, plaintiff's claims against each of the defendants-appellees in this case were dismissed. The circuit court additionally found that 42 Fullerton held full legal and equitable title in fee simple absolute. The circuit court subsequently granted plaintiff's motion for judgment—against the defendants who are not parties to this appeal—in the amount of $650,000. Plaintiff now appeals.

## II. THE RACE-NOTICE STATUTE

On appeal, plaintiff argues that the circuit court erred by granting summary disposition for defendants-appellees because plaintiff's claim of interest in the disputed property was the first recorded. We disagree.

## A. STANDARD OF REVIEW

MCR 2.116(C)(8) provides that the trial court may grant summary disposition in favor of the moving party when, "[t]he opposing party has failed to state a claim on which relief can be granted." When considering a motion under MCR 2.116(C)(8), the "trial court must accept all factual allegations as true, deciding the motion on the pleadings alone," and the motion "may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). "We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). "We review de novo questions of statutory interpretation." *Noll v Ritzer*, 317 Mich App 506, 509; 895 NW2d 192 (2016).

## B. ANALYSIS

"Michigan is a race-notice state." *Penrose v McCullough*, 308 Mich App 145, 152; 862 NW2d 674 (2014). Accordingly, "[u]nder MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Id*. (quotation marks and citation omitted). MCL 565.29 provides as follows:

Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form or contains the terms of a deed of quit-claim and release shall not affect the question of good faith of such subsequent

-5-

purchaser, or be of itself notice to him of any unrecorded conveyance of the same real estate or any part thereof.

Therefore, "a later interest holder may take priority over a prior conveyed interest only if the later interest holder takes in 'good faith.' " *Id*. (quotation marks and citation omitted). "[A] good-faith purchaser is one who purchases without notice of any defect in the vendor's title." *Id*. But, "[a] person who has notice of a possible defect in a vendor's title and fails to make further inquiry into the possible rights of a third-party is not a good-faith purchaser . . . ." *Id*. at 152-153 (quotation marks and citation omitted). "Notice of a defect" has been defined as follows:

> Notice is whatever is sufficient to direct attention of the purchaser of realty to prior rights or equities of a third party and to enable him to ascertain their nature by inquiry. Notice need only be of the possibility of the rights of another, not positive knowledge of those rights. Notice must be of such facts that would lead any honest man, using ordinary caution, to make further inquiries in the possible rights of another in the property. [*Id*. at 153 (citation omitted).]

"Furthermore, notice can be actual or constructive. Constructive notice is notice that is imputed to a person concerning all matters properly of record." *Id*. (quotation marks and citations omitted).

Despite plaintiff's arguments to the contrary, the race-notice statute is not implicated in this case because plaintiff's purchase agreement did not constitute a "conveyance," and even if the race-notice statute was implicated, plaintiff was not a bona fide purchaser.

## 1. PLAINTIFF'S PURCHASE AGREEMENT DID NOT CONSTITUTE A CONVEYANCE

Within the context of the race-notice statute, MCL 565.35 defines the term "conveyance" as follows:

> [T]o embrace every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity, *except wills, leases for a term not exceeding 3 years, and executory contracts for the sale or purchase of lands*. [Emphasis added.]

This Court has clarified that "[a] contract for the sale of land is, quite simply, a purchase agreement . . . ." *Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999). "Interests in land are usually created or transferred only by act or operation of law or by written deed of conveyance." *Evans v Holloway Sand and Gravel, Inc*, 106 Mich App 70, 79; 308 NW2d 440 (1981). "Generally, a deed executed in performance of a contract for the sale of land operates as satisfaction and discharge of the terms of the executory contract." *Chapdelaine v Sochocki*, 247 Mich App 167, 171; 635 NW2d 339 (2001).

In this case, plaintiff never had a deed to the property; it simply had a purchase agreement. Moreover, plaintiff's purchase agreement was never fully executed—plaintiff did not pay the full

purchase price, and Bohadana never conveyed the deed.[7]  Therefore, plaintiff's purchase agreement constituted an executory contract, not a "conveyance" of property.  See MCL 565.35; *Chapdelaine*, 247 Mich App at 171; *Zurcher*, 238 Mich App at 291.  Accordingly, the race-notice statue, which concerns conveyances of real estate, was not implicated by plaintiff's purchase agreement, and plaintiff never had a present interest in the property.  See MCL 565.29; MCL 565.35; *Evans*, 106 Mich App at 79.

Because plaintiff never had a present property interest, the trial court did not err by granting defendants' motion for summary disposition under MCR 2.116(C)(8) ("The opposing party has failed to state a claim on which relief can be granted.").

## 2. PLAINTIFF IS NOT A BONA FIDE PURCHASER

Even if plaintiff's purchase agreement did constitute a conveyance under the race-notice statute, plaintiff's argument fails because plaintiff was not a bona fide purchaser.

The circuit court properly found that plaintiff was not a bona fide purchaser because plaintiff knew of Estell Manor's interest in the property.  Plaintiff's knowledge is indisputable considering the fact that there was a contingency statement regarding Estell Manor within plaintiff's purchase agreement with Bohadana.

On appeal, plaintiff argues that after checking the chain of title, it learned that Anderson, Estell Manor, and Precipice were participants in the fraudulent chain of title beginning with Global-Michigan.  Therefore, plaintiff learned that Estell Manor had nothing to convey, and Estell Manor's claim did not provide any basis to question Bohadana's ownership of the property, which was obtained through the legitimate chain of title beginning with Global-New York.  But, this argument is immaterial for the purposes of determining whether plaintiff had knowledge of the possibility that a third party was claiming an interest in the property.  As previously stated, "[n]otice need only be of the possibility of the rights of another, not positive knowledge of those rights."  *Penrose*, 308 Mich App at 153 (quotation marks and citation omitted).  Considering the contingency statement within plaintiff's purchasing agreement and plaintiff's acknowledgement that it looked into Estell Manor's record title, plaintiff clearly had constructive notice that Estell Manor *may* have rights to the property.  *Id*.  Therefore, the circuit court did not err by determining that plaintiff was not a bona fide purchaser.  *Id*. at 152-153.

## 3. AFTER-ACQUIRED-TITLE DOCTRINE

In the same order that granted defendants' motion for summary disposition, the circuit court also ordered that 42 Fullerton held full legal and equitable title in fee simple absolute.  On appeal, 42 Fullerton argues that the after-acquired-title doctrine cured the fraudulent chain of title beginning with Global-Michigan.  We agree.

---

[7] "[T]he deed was transferred to be held in escrow" with Detroit Title; however, plaintiff never received this deed.  Moreover, plaintiff agreed to purchase the property for $50,000; however, plaintiff had only put "[$]25,000 in escrow with Detroit Title . . . ."

"Under the doctrine of after-acquired title, if a grantor by warranty deed conveys an estate that the grantor does not own and subsequently acquires title to that estate, that title inures to the benefit of his or her grantee." *Richards v Tibaldi*, 272 Mich App 522, 541; 726 NW2d 770 (2006) (quotation marks and citation omitted). But, "a quitclaim deed can never operate to convey an after-acquired title, since a grantor in the quitclaim deed warrants no title and conveys only that which he or she owns at the time of the conveyance." *Id.* (quotation marks and citation omitted).

On appeal, 42 Fullerton acknowledges that the 2017 quitclaim deed from Global-Michigan to Anderson constituted a fraudulent conveyance.[8] But 42 Fullerton argues that that issue was rectified by the 2021 warranty deed from Bohadana to Precipice. We agree. As previously stated, Bohadana—who was in the nonfraudulent chain of title—attempted to sell the property three times: (1) first, to Anderson; (2) second, to plaintiff; and (3) third, to Precipice. But, the sales to Anderson and plaintiff were never completed—the sale to Anderson was never recorded, and plaintiff never paid the full purchase price or received the deed. Conversely, Bohadana's conveyance to Precipice was completed and recorded. Because Precipice ultimately received a valid warranty deed from Bohadana, who was within the proper chain of title, the after-acquired-title doctrine holds that Precipice's earlier warranty deed with Legacy One, and Legacy One's subsequent warranty deed with 42 Fullerton, be enforceable. See *Richards*, 272 Mich App at 541. Therefore, the circuit court did not err by ordering that 42 Fullerton held full legal and equitable title to the property.

Affirmed. Defendants-appellees, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Christopher P. Yates
/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney

---

[8] After Global-Michigan's quitclaim deed to Anderson took place, the following transactions ensued in that chain of title: the 2017 quitclaim deed from Anderson to Estell Manor, the 2020 quitclaim deed from Estell Manor to Precipice, and the June 2021 warranty deeds from Precipice to Legacy One and Legacy One to 42 Fullerton.